PEOPLE v FIELDS

Docket No. 97269. Argued November 3, 1994 (Calendar No. 13). Decided March 7, 1995. Rehearing denied *post*, 1224.

Warren P. Fields pleaded guilty in the Oakland Circuit Court, Edward Sosnick, J., of possession with intent to deliver more than 50 but less than 225 grams of cocaine and was sentenced below the minimum ten-year sentence. The Court of Appeals, DANHOF, P.J., and GILLIS and W. R. BEASLEY, JJ., in an unpublished memorandum opinion, remanded the case for resentencing (Docket No. 147473). The defendant appeals.

In an opinion by Chief Justice BRICKLEY, joined by Justices BOYLE, RILEY, and MALLETT, the Supreme Court *held:*

Only those factors that are objective and verifiable may be used to determine whether substantial and compelling reasons exist under MCL 333.7401(4); MSA 14.15(7401)(4) to deviate from the minimum sentence imposed by the Legislature.

1. In imposing a sentence under MCL 333.7401(4); MSA 14.15(7401)(4) for substantial and compelling reasons below the statutory minimum, only objective factors capable of verification may be applied, i.e., those actions or occurrences that are external to the minds of the judge, the defendant, and others involved in making the decision, capable of being confirmed. Both prearrest and postarrest factors may be used.

2. The words "substantial and compelling" cannot acquire a meaning that would allow judges to regularly use broad discretion to deviate from the statutory minimum sentence. Rather, substantial and compelling reasons were intended to exist only in exceptional cases. In evaluating whether a case presents substantial and compelling reasons to depart below the mandatory minimum sentence, courts should place particular emphasis on mitigating circumstances surrounding the offense that fall short of warranting a finding of innocence, but render the defendant less culpable, because of the possibility that the Legislature did not consider such behavior in setting the minimum. In addition, factors such as the defendant's prior record,

REFERENCES

Am Jur 2d, Criminal Law §§ 527, 541.

See ALR Index under Sentence and Punishment.

age, and work history are useful in determining whether departure is warranted. Factors that arise after a defendant's arrest, should be assigned the same weight as preexisting factors, and factors such as cooperation with law enforcement officials should be given special attention.

3. The existence of a particular factor is a factual determination for the trial court and should be reviewed for clear error. A determination that a particular factor is objective and verifiable should be reviewed as a matter of law. A determination that objective and verifiable factors present in a particular case constitute substantial and compelling reasons to depart from the statutory minimum sentence are to be reviewed for abuse of discretion.

4. In this case, the trial judge listed several reasons for deviating from the statutory minimum sentence. Because the reasons were not all objective and verifiable, and because it is unclear whether the trial judge would have found substantial and compelling reasons to deviate from the statutory minimum solely on the basis of objective and verifiable factors, remand is required for a determination whether substantial and compelling reasons exist to deviate from the statutory minimum.

Justice BOYLE, concurring, and agreeing with the majority's analysis of legislative intent, stated further that MCL 333.7401; MSA 14.15(7401) fails to provide a satisfactory explanation of substantial and compelling reasons necessary for departure from a prescribed minimum sentence. The majority approaches the inadequately defined phrase as if the Court has the authority to decide, as a matter of law, which factors should be included or excluded through application of an objective and verifiable test, while the dissent would resolve the quandary by concluding that an objective and verifiable standard is unworkable in favor of broad judicial discretion to subjectively consider all the circumstances that surround the particular offender and the particular offense. Rather, in lieu of legislative clarification, the Supreme Court could provide guidance to the trial and appellate courts in implementation of the legislative intent by reference to the well-established meaning of substantial and compelling and the traditional standards regarding the burden of proof and the burden of persuasion.

Recognizing the primary legislative intent of the statute to deter drug crimes through the imposition of long minimum sentences, it is evident that the burden rests on the defendant to demonstrate substantial and compelling reasons on the record why a minimum sentence below that required by law is dictated and would not do damage to the law's overriding

purpose. The presumption exists that no lesser minimum sentence than that prescribed by the statute should be imposed. Where the defendant advances and proves substantial and compelling reasons that permit the conclusion that no reasonable decisionmaker would impose the statutory minimum, departure is permissible. Where the imposition of the statutory minimum is debatable or arguable, departure below the minimum is precluded.

It is clear that substantial reasons for departure below the presumptively allowable minimum sentence are not enough to meet the defendant's burden. Under the substantial evidence test, only the amount of evidence that a reasonable mind would accept as sufficient to support a conclusion is required, despite the possible preponderance of evidence supporting a different conclusion. The possibility of a debatable outcome is impermissible. While substantial reasons may exist to justify a course of action, those reasons will be inadequate if countervailing, superior considerations are presented that compel a conclusion against such action.

The presumption that the minimum sentencing requirements of MCL 333.7401; MSA 14.15(7401) advance the valid legislative goal of crime deterrence is analogous to the rational basis test. It is the need for an argument that forces the conclusion that the presumptive rule should not be applied that is at the crux of the substantial and compelling reasons of § 7401(4), and makes the rational basis test a valuable tool for understanding this standard. The overarching intent of § 7401, to deter people from committing drug-related crimes, like the legitimate state interest advanced under a rational basis review, is presumed to be advanced by the imposition of at least the minimum sentences commanded by the statute. It is only when a defendant advances an argument that convinces a court that the legislative intent could not reasonably be perceived to be advanced by imposition of the minimum sentence, that substantial and compelling reasons for departure from the minimum sentence have been articulated. As long as it is evident from all the considerations presented that the question of departure from the statutory minimum is debatable, no substantial reasons compelling departure from the minimum should be found. In effect, the burden of proof is to satisfy the sentencing court that in the circumstances presented no reasonable legislative or judicial decisionmaker would impose the mandatory minimum sentence.

Affirmed in part and remanded.

Justice CAVANAGH, joined by Justice LEVIN, dissenting, stated

that the majority improperly adds limitations to sentencing discretion not intended by the Legislature.

The Michigan Legislature has not expressly provided any limitations on the types of factors a sentencing court may consider, or the weight to be given any particular factor, in determining whether substantial and compelling reasons exist for a departure from a mandatory minimum sentence pursuant to MCL 333.7401(4); MSA 14.15(7401)(4). Rather, it specified that the threshold for such departure is a substantial and compelling reason established by the circumstances of the case.

Because sentencing relates to a particular defendant and to a particular sentencing judge, by definition the weighing of all the factors and circumstances before the sentencing court must be subjective. There is no direction from the Legislature, either in the language of the statute or in its legislative history, that substantial and compelling reasons should be limited to objective factors. While the evidentiary bases logically must be verifiable, how the individual factors are weighed, by definition, must be subjective.

This is not unlimited discretion. The evidentiary record will have to demonstrate to a reviewing court that such reasons exist. In this case, such a record exists.

Justice WEAVER took no part in the decision of this case.

SENTENCES — CONTROLLED SUBSTANCES — DEVIATIONS FROM STATU-
    TORY MINIMUM.

    Only those factors that are objective and verifiable may be used to determine whether substantial and compelling reasons exist to deviate from the minimum sentence imposed for drug-related crimes (MCL 333.7401[4]; MSA 14.15[7401][4]).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Joyce F. Todd,* Chief, Appellate Division, and *Robert C. Williams,* Assistant Prosecuting Attorney, for the people.

*Young & Kaluzny* (by *Stuart L. Young*) for the defendant.

BRICKLEY, C.J. In this case we are called upon to decide what constitute substantial and compelling reasons under MCL 333.7401(4); MSA 14.15(7401)(4)

to deviate from the minimum sentences imposed by the Legislature. We decide that only those factors that are objective and verifiable may be used to judge whether substantial and compelling reasons exist, and thereby uphold the basic tenets of the test announced by the Court of Appeals in *People v Hill,* 192 Mich App 102; 480 NW2d 913 (1991). The trial court in this case used both objective and subjective factors to determine that a deviation from the ten-year minimum sentence was appropriate. Consequently, we vacate the sentence imposed and remand to the trial court for the determination whether, in considering only those factors that are objective and verifiable, there are substantial and compelling reasons to sentence this defendant to a term of years below the statutory minimum.

I

The defendant, Warren Perry Fields, pleaded guilty of one count of possession with intent to deliver more than 50 but less than 225 grams of cocaine. MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii). The Legislature has prescribed a minimum sentence of ten years in prison for this crime. It also, however, has empowered courts to depart from some of the minimum sentence prescriptions under certain circumstances. MCL 333.7401(4); MSA 14.15(7401)(4) provides:

> The court may depart from the minimum term of imprisonment authorized under subsection (2)(a)(ii), (iii), or (iv) if the court finds on the record that there are substantial and compelling reasons to do so.

After accepting the defendant's plea, the court heard arguments on a request by the defense that

the judge depart below the statutorily imposed minimum sentence. After listening to statements from both sides on the issue, the judge applied *People v Troncoso,* 187 Mich App 567; 468 NW2d 287 (1991), and decided to depart from the statutory minimum. The judge summarized his reasons for departure as follows:

> · I'm satisfied that the basis for my deviating from the mandatory 10-year is that you're a young man of 24 years of age and you have no prior record. I'm also satisfied—standing alone obviously wouldn't matter but you just were over the 50 gram mark, the 54 grams.[1] This appears to be, based upon the record, your only involvement that can be established.
>
> You had a good job for over five years with a good work record, and I'm taking into consideration the extreme remorse that I see from you. You are devastated by this. You've admitted your guilt, and you've accepted your responsibility.
>
> You've got family[,] friends and co-workers, as evidenced by the letters, indicate you do—are a person capable of rehabilitation. I think you have a potential for rehabilitation, and I'm satisfied that your motivation to help others, although totally in some respects outbalanced, at least it indicates that you're not a cold, callous drug dealer out to profit solely for your own benefit.

The judge then deviated from the ten-year minimum, sentencing the defendant to a prison term of five to twenty years. The plaintiff appealed, and the Court of Appeals remanded for resentencing, citing *Hill, supra,* which had been decided as the appeal was pending. The defendant then appealed to this Court.

---

[1] The statute provides for a sentence of ten years for the possession with intent to deliver 50 grams or more but less than 225 grams of any mixture containing cocaine. MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii). The defendant possessed 54.07 grams of a cocaine-based mixture at the time of his arrest.

II

A

In 1978, the Legislature considered a bill to change the penalties imposed on controlled substance offenders. The legislative history of the bill indicates that it was intended to combat an increase in drug-related crime. The House Legislative Analysis stated:

> Some persons claim that the state has failed to stem drug traffic because the penalties for drug dealing are not severe enough, and law enforcement tools are inadequate. They contend that the potential for profit in drug dealing is so great that Michigan's present penalties pose little or no deterrent to would-be violators, with lenient probation and parole policies weakening the threat of imprisonment still further. [House Legislative Analysis, HB 4190, Third Analysis, May 17, 1978.]

The legislative analysis summarizes arguments advanced by both supporters and opponents of the bill. One argument advanced in support of the bill was summarized,

> The severe penalties imposed by the bill would have an important deterrent effect on illicit drug dealing. With the present drug penalties and parole possibilities, dealers feel that if caught they will spend little or no time in prison. The risk to them seems relatively small, and the potential for profit great. Consequently, only more severe penalties and the certainty of punishment will serve to deter would be violators. [*Id.*]

In order to combat this problem, the Legislature decided to impose harsh minimum sentences for drug dealers. The law went into effect September 30, 1978.

Ten years later, the Legislature passed several amendments to the original statute, reducing the minimum sentences imposed. These amendments also included the addition of § 7401(4), which allowed a trial judge to deviate from minimum sentences set out in the statute if there were substantial and compelling reasons to do so. According to the Senate Fiscal Agency, the bill's supporters argued that

> by allowing judges to depart from the minimum terms, and reducing the minimum for larger quantities, the bill would moderate what has been an uncompromising law and would give judges greater flexibility in making sentencing decisions based on the individual circumstances of a case. [Senate Fiscal Agency Analysis, SB 598, 600, 603, 610, Third Analysis, August 29, 1988.]

The House Legislative Analysis added,

> The bill would make for a law that was strict without unduly interfering with judicial discretion. [House Legislative Analysis, SB 277 (Substitute H-2), First Analysis, December 16, 1987.]

In 1989, the Legislature amended the law again, in order to return the minimum sentences for larger quantities to their original, longer lengths. 1989 PA 143. Section 7401(4) was left unchanged.

B

The words "substantial and compelling" caused almost immediate conflict in the lower courts. In *People v Downey,* 183 Mich App 405; 454 NW2d 235 (1990), the Court of Appeals panel analyzed several sentences that deviated from the statutory minimum. The panel concluded that judicial dis-

cretion under the statute was "very limited," and set strict standards for what kinds of reasons could be considered substantial and compelling. Central to those standards was the requirement that only objective factors capable of verification could be used to justify departure from the statutory minimum. The Court also held that only factors that existed before the defendant was arrested could be considered objective. *Id.* at 415-416.

In *People v Krause,* 185 Mich App 353; 460 NW2d 900 (1990), the Court of Appeals affirmed the "objective and verifiable" requirement set forth in *Downey.* The Court defined objective and verifiable factors as those "actions or occurrences which are external to the minds of the judge, defendant and others involved in making the decision . . . [that are] capable of being confirmed." *Krause* at 358. The Court in *Krause* also modified the *Downey* test, by allowing trial judges to use both prearrest and postarrest factors. It warned, however, that postarrest factors should be used with caution because of the risk that defendants will create postarrest events to influence the sentencing judge. *Krause, supra* at 358-359.

Judge GRIFFIN dissented in *Krause,* arguing that as long as the factors used to deviate from the statutory minimum were substantial and compelling, it should not matter whether they were objective and verifiable. He noted that neither the statute, the relevant legislative history, nor the common meaning of the words substantial and compelling even hinted at a subjective/objective dichotomy, and accused the Court in *Downey* of creating hurdles not intended by the Legislature. *Id.* at 363-365.

Judge GRIFFIN later used his dissenting opinion in *Krause* as the basis for his majority opinion in *Troncoso, supra. Troncoso* created a split in the

case law, which was resolved by *Hill, supra.*[2] In *Hill,* the Court upheld the standard enunciated in *Krause.* Judge GRIFFIN wrote a strong dissenting opinion, again restating his arguments in *Troncoso.*

III

A

Statutes should be interpreted according to the common and approved usage of any undefined words within them. MCL 8.3a; MSA 2.212(1). *Webster's New World Dictionary, Third College Edition* defines "substantial," in relevant part, as, "2 real; actual; true; not imaginary 3 strong; solid; firm; stout 4 considerable; ample; large 5 of considerable worth or value; important . . . ." It defines "compelling," in relevant part, as, "irresistibly or keenly interesting, attractive, etc.; captivating . . . ."

From these definitions it is evident that the words "substantial and compelling" constitute strong language. The Legislature did not wish that trial judges be able to deviate from the statutory minimum sentences for any reason. Instead, the reasons justifying departure should "keenly" or "irresistibly" grab our attention, and we should recognize them as being "of considerable worth" in deciding the length of a sentence.

The legislative history of MCL 333.7401; MSA 14.15(7401) supports this interpretation of the words substantial and compelling. By passing MCL 333.7401; MSA 14.15(7401), the Legislature hoped to keep drug dealers in prison for long periods, both to remove them from society and to deter

---

[2] *Hill* was decided by a thirteen-judge special panel, under Administrative Order No. 1990-6, 436 Mich lxxxiv. *Hill* was a seven to six decision.

others from following their example. House Legis-
lative Analysis, HB 4190, Third Analysis, May 17,
1978. See also *Hill, supra* at 116-117. In this
context "substantial and compelling" cannot ac-
quire a meaning that would allow trial judges to
regularly use broad discretion to deviate from the
statutory minimum. Such an interpretation would
defeat the intent of the statute. Rather, it is
reasonable to conclude that the Legislature in-
tended "substantial and compelling reasons" to
exist only in exceptional cases.

It is true that the legislative history of the 1988
amendments indicates that § 7401(4) was meant to
allow judges some flexibility in sentencing under
the formerly rigid law. The legislative analyses
consistently mention a desire to "moderate" an
"uncompromising" law through judicial discre-
tion.[3] However, the Legislature will be presumed
under established rules of statutory construction
to have intended that its amendments of a statute
be construed in connection and in harmony with
the other provisions of the statute. *Williams v
Secretary of State,* 338 Mich 202, 207; 60 NW2d
910 (1953). The moderating effect of the 1988
amendments should therefore be read in light of
the overarching intent of the Legislature to deter
people from committing drug-related crimes.

We believe that the best method of maintaining
the limited but moderating effect intended by the
Legislature is to uphold the "objective and verifia-
ble" test recently approved by the Court of Ap-
peals in *Hill, supra.* This test allows judges to
consider many of the factors traditionally utilized
in formulating sentences. It also provides sufficient

---

[3] See, e.g., House Legislative Analysis, SB 598, First Analysis,
February 17, 1988; Senate Fiscal Agency Analysis, SB 598, 600, 603,
610, First Analysis, January 27, 1988; and Senate Fiscal Agency
Analysis, SB 598, 600, 603, 610, Third Analysis, August 29, 1988.

restrictions to assure that the Legislature's intent in passing the statute will not be subsumed by the use of what is intended to be an exception to the rule of long mandatory sentences.

B

We respect the opinion, voiced by Judge GRIFFIN in *Troncoso,* that these are judicially concocted boundaries not contemplated by the Legislature or in the definitions of the words themselves. *Troncoso, supra* at 574. This is undoubtedly true to some extent. Nevertheless, we agree with the majority in *Hill* that the *Troncoso* standard does not adequately reflect the Legislature's intent to keep drug dealers off the streets and to deter others from following their paths. House Legislative Analysis, HB 4190, Third Analysis, May 17, 1978.

Furthermore, the subjectivity of the *Troncoso* standard makes appellate review of sentencing departures under the statute more difficult, and thus impairs the right of prosecutors to appeal.[4] An appellate court cannot review whether the defendant has expressed remorse, or if he has a desire to help others, factors cited by the trial judge in this case.

For these reasons, we believe that the intent of the Legislature is better served by giving the words "substantial and compelling" a more specifically defined meaning. As the Court of Appeals remarked in *Hill, supra* at 118:

> We find that if trial judges can use factors that are both subjective and not verifiable, they would have freedom to depart from the mandatory minimum for almost any reason they choose to use and

---

[4] MCL 770.12; MSA 28.1109, see, generally, *People v Milbourn,* 435 Mich 630, 644; 461 NW2d 1 (1990).

they would hold in their hands the power to defeat the legislative purpose at will, subject only to review for abuse of discretion and lack of proportionality under *People v Milbourn,* 435 Mich 630; 461 NW2d 1 (1990), the same standards that apply to sentences that are not mandatory. If one wishes to argue that judges ought to have such greater discretion, the argument should be addressed to the Legislature and not to the appellate courts.

To leave the definitions of substantial and compelling to the discretion of the sentencing court therefore belies the legislative purpose in enacting a presumptive sentencing statute. *People v Brown,* 184 Mich App 722, 723-724; 439 NW2d 38 (1990). In approving the objective and verifiable test, we hope to make it easier for both trial and appellate courts to sentence and review respectively within the perimeters that the Legislature intended.[5]

C

For additional guidance in regard to the meaning of the words "substantial and compelling," we look to other jurisdictions that use these words to govern departures from presumptive sentences set by a state legislature. Several state legislatures and courts that have defined and interpreted this language in the sentence departure context have limited its meaning to exclude subjective factors.

The Washington Legislature has created a system of presumptive sentences, or sentencing guidelines. See Wash Rev Code Ann 9.94A.010 *et seq.* These guidelines require that if a judge departs

---

[5] Although we emphasize that a finding of substantial and compelling circumstances should be the exception and not the rule, it should also be noted that this is not a threshold that is meant to be impossible to reach. This would defeat the intent of the Legislature in § 7401(4) to moderate this otherwise uncompromising statute. *People v Shinholster,* 196 Mich App 531, 534; 493 NW2d 502 (1992).

from the presumptive sentence, the judge must list substantial and compelling reasons for the departure. Wash Rev Code Ann 9.94A.120(2). In the statute, the Washington Legislature provides several examples of mitigating reasons that may be used to justify a downward departure from the guidelines. The great majority of these examples consist of circumstances surrounding the offense.[6]

Although there is a split in authority, the Washington appellate courts have been moving toward an interpretation of their state's guidelines under which only objective factors could be used to justify a downward departure from a presumptive sentence. In *State v Hodges*, 70 Wash App 621; 855 P2d 291 (1993), the Court of Appeals of Washington considered whether to affirm a downward de-

---

[6] The statute provides:

(a) To a significant degree, the victim was an initiator, willing participant, aggressor, or provoker of the incident.

(b) Before detection, the defendant compensated, or made a good faith effort to compensate, the victim of the criminal conduct for any damage or injury sustained.

(c) The defendant committed the crime under duress, coercion, threat, or compulsion insufficient to constitute a complete defense but which significantly affected his or her conduct.

(d) The defendant, with no apparent predisposition to do so, was induced by others to participate in the crime.

(e) The defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law, was significantly impaired (voluntary use of drugs or alcohol is excluded).

(f) The offense was principally accomplished by another person and the defendant manifested extreme caution or sincere concern for the safety or well-being of the victim.

(g) The operation of the multiple offense policy of RCW 9.94A.400 results in a presumptive sentence that is clearly excessive in light of the purpose of this chapter, as expressed in RCW 9.94A.010.

(h) The defendant or the defendant's children suffered a continuing pattern of physical or sexual abuse by the victim of the offense and the offense is a response to that abuse. [Wash Rev Code Ann 9.94A.390.]

parture on the basis of several subjective factors. The court noted:

> An exceptional sentence is appropriate only when the circumstances of the crime distinguish it from other crimes of the same statutory category. . . . The [1981 Sentencing Reform Act's] sentencing guidelines must be applied "equally to offenders in all parts of the state, without discrimination as to any element that does not relate to the crime or the previous record of the defendant." RCW 9.94A.340. [*Id.* at 624. Citations omitted.]

The court then concluded that " 'departure is warranted only if objective factors common to the crime (as opposed to subjective factors relative to a particular defendant) are present.' " *Id.* at 625.[7]

The departure provisions in Oregon's sentencing guidelines are similar to Washington's. The sentencing judge may not depart from a presumptive sentence under Oregon law unless he finds substantial and compelling reasons to do so on the record. Or Admin R 253-08-001.[8] The Legislature in Oregon, like Washington, has provided a nonexclusive list of reasons that may be used to justify

[7] The one Washington case that has held that subjective factors may constitute substantial and compelling reasons was overruled by the Washington Supreme Court on other grounds. That court did not reach the issue whether substantial and compelling reasons could be subjective. *State v Friederich-Tibbets*, 123 Wash 2d 250; 866 P2d 1257 (1994). The reasoning of the Court of Appeals panel in *Friederich-Tibbets* has been criticized by *Hodges, supra* at 625, and *State v Alexander*, 70 Wash App 608, 617, n 12; 854 P2d 1105 (1993). See also *State v Amo*, 76 Wash App 129, 134; 882 P2d 1188 (1994). (Washington courts have consistently declined to impose exceptional sentences below the standard range in the absence of factors or circumstances related to the defendant's commission of a crime that make the commission of the crime less egregious.)

[8] Judges may in certain circumstances sentence a defendant to probation rather than prison without finding substantial and compelling reasons. Instead, in these circumstances, the judge is required to make several specific findings that indicate that the defendant is more suited to a probationary sentence. Or Admin R 253-05-006.

a downward departure from the guidelines. Most of these examples involve circumstances surrounding the offense.[9]

Oregon's appellate courts have also suggested that only objective factors should be used to justify a departure from that state's sentencing guidelines.

> To assist sentencing courts in determining whether substantial and compelling reasons exist,

[9] The statute provides:

(1) Subject to the provisions of sections (2) and (3) of this rule, the following nonexclusive list of mitigating and aggravating factors may be considered in determining whether substantial and compelling reasons for a departure exist:

(a) Mitigating factors:

(A) The victim was an aggressor or participant in the criminal conduct associated with the crime of conviction;

(B) The defendant acted under duress or compulsion (not sufficient as a complete defense);

(C) The defendant's mental capacity was diminished (excluding diminished capacity due to voluntary drug or alcohol abuse);

(D) The offense was principally accomplished by another and the defendant exhibited extreme caution or concern for the victim;

(E) The offender played a minor or passive role in the crime;

(F) The offender cooperated with the state with respect to the current crime of conviction or any other criminal conduct by the offender or other person. The offender's refusal to cooperate with the state shall not be considered an aggravating factor;

(G) The degree of harm or loss attributed to the current crime of conviction was significantly less than typical for such an offense;

(H) The offender's criminal history indicates that the offender lived conviction-free within the community for a significant period of time preceding his or her current crime of conviction;

(I) The offender is amenable to treatment and an appropriate treatment program is available to which the offender can be admitted within a reasonable period of time; the treatment program is likely to be more effective than the presumptive prison term in reducing the risk of offender recidivism; and the probation sentence will serve community safety interests by promoting offender reformation. [Or Admin R 253-08-002.]

OAR 253-08-002(1) provides a list of aggravating
and mitigating factors . . . . The examples in the
commentary to the rule show that the factors
permit consideration of the circumstances of a
particular crime, which might be different from
what was envisioned by the legislature when it
established the presumptive sentence for that
crime. If the court relies on a factor listed in OAR-
253-08-002(1), its reasons for applying the rule
must show that the case before it involves that
sort of circumstance. The court must provide the
same kind of explanation if it relies on factors not
expressed in OAR 253-08-002. [*State v Wilson,* 111
Or App 147, 150-151; 826 P2d 1010 (1992).]

It should also be noted that the Oregon courts look
to the decisions of the Washington courts to help
interpret their sentencing guidelines. *State v Ken-
nedy,* 113 Or App 134; 831 P2d 712 (1992).

The legislature in Kansas has also passed sen-
tencing guidelines that contain a departure provi-
sion utilizing the phrase, "substantial and compel-
ling reasons." The Kansas Sentencing Guidelines
Act only went into effect on July 1, 1993, and,
consequently, the Kansas state courts have not yet
developed a body of case law interpreting the
meaning of the phrase, "substantial and compel-
ling reasons." There are indications, however, that
Kansas will also interpret this language to require
that objective factors be used to justify a departure
from the guidelines.

One such indication is that because of similari-
ties between the two states, Oregon's sentencing
guidelines served as perhaps the most influential
model for the Kansas Legislature in constructing
its guidelines. Moreover, the guidelines system
implemented explicitly embraced retribution and
incapacitation as the principal reasons for punish-
ment and imprisonment. Thus, the crime of con-
viction, rather than the nature of the offender, has

become the primary determinant of the sentence. Gottlieb, *Kansas adopts sentencing guidelines,* 6 Fed Sent Rptr 158 (1993). Finally, as the Washington and Oregon Legislatures, the Kansas Legislature has provided the courts of that state with a nonexclusive list of mitigating factors. The listed factors, without exception, encompass circumstances surrounding the offense.[10]

Although there are differences between these statutes and the statute at issue in this case, we think that the way the words "substantial and compelling" have been interpreted in the sentence departure context by other courts and legislatures serves as persuasive authority in regard to the most natural meaning of this language in this

---

[10] The statute provides:

(b)(1) Subject to the provisions of subsection (b)(3), the following nonexclusive list of mitigating factors may be considered in determining whether substantial and compelling reasons for a departure exist:

(A) The victim was an aggressor or participant in the criminal conduct associated with the crime of conviction.

(B) The offender played a minor or passive role in the crime or participated under circumstances of duress or compulsion. This factor is not sufficient as a complete defense.

(C) The offender, because of physical or mental impairment, lacked substantial capacity for judgment when the offense was committed. The voluntary use of intoxicants, drugs or alcohol does not fall within the purview of this factor.

(D) The defendant, or the defendant's children, suffered a continuing pattern of physical or sexual abuse by the victim of the offense and the offense is a response to that abuse.

(E) The degree of harm or loss attributed to the current crime of conviction was significantly less than typical for such an offense.

\* \* \*

(3) If a factual aspect of a crime is a statutory element of the crime or is used to subclassify the crime on the crime severity scale, that aspect of the current crime of conviction may be used as an aggravating or mitigating factor only if the criminal conduct constituting that aspect of the current crime of conviction is significantly different from the usual criminal conduct captured by the aspect of the crime. [Kan Stat Ann 21-4716.]

area of the law. *Craig v Larson,* 432 Mich 346, 356; 439 NW2d 899 (1989). That foreign jurisdictions have concentrated on circumstances surrounding the offense committed and excluded subjective factors from their interpretations reinforces our belief that our Legislature had a similar intention in referring to substantial and compelling reasons in MCL 333.7401(4); MSA 14.15(7401)(4).

IV

A

In order to refine and further clarify the test announced today, we make the following observations. First, in evaluating whether a case presents substantial and compelling reasons to depart below the mandatory minimum, courts should place particular emphasis on mitigating circumstances surrounding the offense. For example, in *People v Bates,* 190 Mich App 281, 282-283; 475 NW2d 392 (1991), the trial court found that the defendant's only participation in the crime had consisted of providing transportation for the seller, and that his involvement was not for financial profit. It is appropriate for a sentencing judge to assign this type of fact situation considerable weight in deciding whether to depart from the statutory minimum. These kinds of circumstances, which fall short of warranting a finding of innocence but render the defendant less culpable, are often especially compelling because of the possibility that the Legislature did not consider this type of behavior when it set the statute's harsh minimum sentences.[11]

---

[11] The nonexclusive lists of mitigating factors drawn up by legislatures in foreign jurisdictions such as Washington, Oregon, and Kansas to help interpret their departure statutes support us in this regard. See part III(c) of this opinion. It should be noted that the

Second, we approve of the short, nonexclusive list of factors set forth in *Downey* and *Hill,* for the purpose of evaluating whether a departure from the mandatory minimum is warranted. Those factors were identified as (1) the defendant's prior record, (2) the defendant's age, and (3) the defendant's work history.[12] *Downey, supra* at 414-415.

Third, we overrule the notion from *Krause, supra,* that factors that arise after the defendant's arrest are disfavored. These factors should be assigned the same weight as preexisting factors such as age or employment history. Moreover, the defendant's cooperation with law enforcement officials should be given special attention by the sentencing court. Such assistance enables the authorities to more effectively fight drug-related crime, thus advancing the fundamental goal of MCL 333.7401; MSA 14.15(7401). House Legislative Analysis, HB 4190, Third Analysis, May 17, 1978. We note that the federal sentencing guidelines allow courts to depart below statutory minimum sentences under similar circumstances, as do the sentencing laws of several states. See, e.g., 18 USC 3553(e); USSG § 5K1.1; Idaho Code 37-2732B(8); Or Admin R 253-08-002(1)(a)(F).

Finally, we hold that the existence or nonexistence of a particular factor is a factual determination for the sentencing court to determine, and should therefore be reviewed by an appellate court for clear error. *People v Legg,* 197 Mich App 131, 134; 494 NW2d 797 (1992); *People v Harvey,* 203 Mich App 445; 513 NW2d 185 (1994). The determination that a particular factor is objective and

burden of proof is on the defendant to show the existence of any mitigating circumstances surrounding the offense from an independent and reliable source.

[12] "The facts of the crime that mitigate the defendant's culpability," were also mentioned as an approved factor. *Hill, supra* at 110.

verifiable should be reviewed by the appellate courts as a matter of law. A trial court's determination that the objective and verifiable factors present in a particular case constitute substantial and compelling reasons to depart from the statutory minimum sentence shall be reviewed for abuse of discretion.

B

In order to give further guidance regarding the meaning of "substantial and compelling" within the context of MCL 333.7401(4); MSA 14.15(7401)(4), we cite with approval the following cases from the Court of Appeals. In *Harvey, supra,* the Court affirmed a trial judge's departure from the statutory minimum. The defendant in *Harvey* had no prior record at the age of thirty-three and had been steadily employed at General Motors for fourteen years. He had strong family support and had been on a tether program for about a year before sentencing where he was, in the words of the trial court, an exemplary probationer.[13] We find the combination of the age and employment history of the defendant in this case to be especially noteworthy. Although courts often cite the young age of a defendant as a reason to deviate from a minimum sentence, a person who has advanced to middle age with a clean slate and a solid career may also present a compelling case for deviation, as someone with a proven capacity to live within the bounds society has set.

In *People v Shinholster,* 196 Mich App 531; 493 NW2d 502 (1992), the Court of Appeals found that

---

[13] The defendant in *Harvey* was put on probation as a result of a less serious offense committed in the same transaction as the one at issue in that case.

substantial and compelling reasons existed to depart from the minimum statutory sentence. The defendant, at age thirty-six, had a prior record that included only an eleven-year-old conviction for the possession of marijuana, a history of steady employment, and strong family support. In addition, the Court found that the government's actions, although not rising to the level of entrapment, purposefully escalated the crime. This last factor is of particular importance in our approval of the resolution reached in *Shinholster.* As a mitigating circumstance surrounding the offense, it weighs heavily in favor of a deviation from the statutory minimum.

In *People v Poppa,* 193 Mich App 184; 483 NW2d 667 (1992), the defendant argued that substantial and compelling reasons existed for a departure from the statutory minimum. He pointed to his extensive cooperation with law enforcement officials, and the defendant's assertion that part of the problems the defendant had been having at the time of his arrest were the result of his recent emigration from Romania and his difficulty adjusting to his newfound freedoms. The Court held that the trial court had acted within its discretion in not finding a sufficient basis to depart from the minimum.

We find that these cases correctly implemented the requirements of the test we approve and modify today. As the appellate courts of this state continue to work with and refine this test, we believe it will become progressively easier to evaluate what are and are not substantial and compelling reasons under the statute. In fact, we view the existence of a body of appropriately decided case law to be a distinct advantage to our affirmation of the *Downey-Krause-Hill* test.

V

In applying these principles to the present case, we note that at the defendant's sentencing hearing the trial judge listed several reasons for deviating from the statutory minimum. These reasons were not all objective and verifiable as we have now defined those terms. The judge considered in his analysis that the defendant had expressed "extreme remorse," that he had accepted responsibility for his actions and was devastated by their results, and that he was motivated to help others. These factors, while acceptable under *Troncoso,* we now find to be inappropriate.

However, the trial judge also listed several factors that are appropriate under the standard we announce today, including the defendant's age, his solid work record, and the fact that the defendant had no prior contact with the criminal justice system.

Sentencing normally is not a job for the appellate court, the usual procedure being to send the case back to the trial judge for resentencing if it is found that the sentence is in some respect deficient. *People v Earegood,* 383 Mich 82; 173 NW2d 205 (1970). It is unclear whether the trial judge in this case would have found substantial and compelling reasons to deviate from the statutory minimum solely on the basis of objective and verifiable factors.

Therefore we remand the case to the trial court for the judge to determine whether, under the standard announced today, he finds substantial and compelling reasons to deviate from the statutory minimum. In all other respects, the decision of the Court of Appeals is affirmed.

BOYLE, RILEY, and MALLETT, JJ., concurred with BRICKLEY, C.J.

BOYLE, J. (*concurring*). I would affirm the deci-

sion of the Court of Appeals, albeit for reasons
other than those articulated by that Court. The
majority analyzes the intent of the Legislature
both in enacting the original version of MCL
333.7401; MSA 14.15(7401) and in amending that
statute, inter alia, to add subsection 4. BRICKLEY,
C.J., *ante* at 64-65. From this analysis, the major-
ity concludes that the statute has an "overarching
intent . . . to deter people from committing drug-
related crimes," *id.* at 68, while allowing trial
courts some flexibility to depart below the statu-
tory minimum sentences in the unique cases in
which "the Legislature's intent in passing the
statute will not be subsumed by the use of what is
intended to be an exception to the rule of long
mandatory sentences." *Id.* at 69. Although I
agree with the majority's analysis of legislative
intent, in my view, the statute fails to provide a
satisfactory explanation of "substantial and com-
pelling reasons." The majority approaches the in-
adequately defined "substantial and compelling
reasons" as if the Court has the authority to
decide, as a matter of law, which factors should be
included or excluded through application of an
" 'objective and verifiable' " test. *Id.* at 68. The
dissent would resolve the quandary by concluding
that an objective and verifiable standard "is un-
workable," CAVANAGH, J., *post* at 100, in favor of
broad judicial discretion to subjectively consider
all the circumstances that surround the particular
offender and the particular offense. *Id.* at 90. I
believe that in lieu of legislative clarification, we
could provide guidance to the trial and appellate
courts in implementation of the legislative intent
by reference to the well-established meaning of
"substantial and compelling" and the traditional
standards regarding the burden of proof and the
burden of persuasion. However, although I do not
join in the majority's approval of *People v Shinhol-*

*ster*,[1] Brickley, C.J., *ante* at 78-79, in light of the extensive efforts of the Court of Appeals to provide meaningful guidance in interpreting the statutes at issue, I believe it would be a disservice to that Court, the trial courts, and the bar to dispose of this question in a plurality opinion. Accordingly, I concur with Chief Justice Brickley's resolution.

I

Recognizing the primary legislative intent of the statute to deter drug crimes through the imposition of long minimum sentences,[2] it is evident that the burden rests on the defendant to demonstrate substantial and compelling reasons on the record why a minimum sentence below that required by law is dictated and would not do damage to the law's overriding purpose. Thus, the presumption is, in all cases, that at least the minimum statutory sentence should be imposed. It is only when a defendant can demonstrate justifications for a lower minimum sentence that are both substantial *and* compelling that such a departure is possible.

II

Initially, it is clear that substantial reasons for departure below the presumptively allowable minimum sentence are not enough to meet the defendant's burden. Satisfaction of the "substantial evidence test" standard of appellate review, for exam-

---

[1] 196 Mich App 531; 493 NW2d 502 (1992). This is dicta with a vengeance. The question whether defendant's successive criminal acts not involving police entrapment can amount to a mitigating circumstance is far too significant to be resolved in the context of a record that does not present that question.

[2] An inability to appreciate this fundamental legislative goal permeates the dissenting opinion and fatally flaws the attempt to rationalize a subjective and unlimited discretionary power afforded trial courts for departure below the statutory mandate.

ple, used for review of decisions of administrative agencies, would be inadequate to meet a "substantial and compelling reasons" requirement. Under the substantial evidence test, only "the amount of evidence that a reasonable mind would accept as sufficient to support a conclusion" is required, *In re Payne,* 444 Mich 679, 692; 514 NW2d 121 (1994) (opinion of BOYLE, J.), despite the possible preponderance of evidence supporting a different conclusion. *Id.* at 690, n 8, see also *Jackson v People,* 9 Mich 111, 119 (1860), quoted in *Payne* at 690. The possibility of a debatable outcome is impermissible under the substantial and compelling evidence standard. The Legislature is presumed to have knowledge of the meaning of such terms and to have consciously elevated the burden of proof by the term "compelling." Thus, unless those reasons also compel the conclusion that a lower minimum sentence should be imposed, the requirements of § 7401(4) have not been met.

Demonstration of the distinction between substantial reasons and compelling reasons can be found in several United States Supreme Court decisions addressing constitutional questions outside the sphere of criminal law.[3] In *Committee for Public Ed & Religious Liberty v Nyquist,* 413 US 756; 93 S Ct 2955; 37 L Ed 2d 948 (1973), the Court concluded that a package of financial aid programs for nonpublic elementary and secondary schools,

---

[3] I examine the use of the terms "substantial" and "compelling," as well as the phrase "substantial and compelling reasons," in a legal context to aid courts in understanding the proper application of those terms in the present setting. While generally the words of a statute are understood "according to the common and approved usage of the language," words and phrases "as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning." MCL 8.3a; MSA 2.212(1). I do not find the use of the words "substantial" and "compelling" separately as terms of art in the following cases, but I do not discount the possibility of such a reading of the phrase "substantial and compelling reasons."

created through amendment of New York State's education and tax laws, violated the Establishment Clause. The Court readily admitted that the state had "substantial reasons" for enacting the legislation. *Id.* at 795. "Few would question most of the legislative findings supporting this statute." *Id.* The Court, however, still found that the programs were constitutionally impermissible. In rejecting the state's argument for preserving a portion of the legislation allowing tax credits to parents of children attending nonpublic schools, the Court concluded that the rationale of case precedent "plainly compels the conclusion that New York's tax package violates the Establishment Clause." *Id.* at 791.

In *Hicklin v Orbeck,* 437 US 518; 98 S Ct 2482; 57 L Ed 2d 397 (1978), the Court considered the constitutionality, under the Privileges and Immunities Clause, of a state statute deemed "Alaska Hire." Claiming a desire to reduce unemployment, Alaska Hire required a number of categories of oil and gas related agreements to contain clauses requiring employment of qualified Alaska residents, in preference over nonresidents. Citing *Toomer v Witsell,* 334 US 385; 68 S Ct 1156; 92 L Ed 1460 (1948), the Court admitted that the Privileges and Immunities Clause did not preclude state efforts to "bias employment opportunities in favor of its own residents," 437 US 525, but noted that such discrimination was only permissible where a "substantial reason" for such action exists, i.e., " 'there is something to indicate that noncitizens constitute a peculiar source of evil at which the [discriminatory] statute is aimed.' " *Id.* at 525-526. The Court held that no appropriately substantial reason existed in *Hicklin* to justify the state's action, and, moreover, even if it did, *Toomer,* inter alia, "compel[led] the conclusion that Alaska Hire

nevertheless fails to pass constitutional muster" because the blanket preference for state residents did not bear a substantial relationship to the avowed purpose of reducing unemployment. *Id.* at 526-527.

Both · *Nyquist* and *Hicklin* demonstrate that while *substantial* reasons—strong, solid reasons of considerable value—may exist to justify a course of action, those reasons will be inadequate if countervailing, superior considerations are presented that *compel* a conclusion against such action. In the cases discussed above, those superior considerations were the requirements of the Establishment and Privileges and Immunities Clauses, which forced a conclusion striking down the legislative action in question. Those constitutional precepts are presumptively "compelling" unless arguments for an exception are of such force that they are irrebuttable, being both substantial and compelling. In the present case, the superior consideration that must be met and decisively surmounted is the overarching legislative intent of deterrence of drug crimes. It is to further clarification of the "substantial and compelling reasons" standard of review to which I now turn.

III

The "substantial and compelling reasons" standard is most familiar in challenges to state action burdening fundamental rights or discriminating against suspect classes. See, e.g., *Dunn v Blumstein,* 405 US 330, 335; 92 S Ct 995; 31 L Ed 2d 274 (1972) (striking down durational residence requirements). Under this strict scrutiny standard of review, such state action is impermissible unless it is a necessary means to promote a compelling state interest. *Id.* at 337.

While cases imposing a substantial and compelling reason standard of review where state action impinges on fundamental rights demonstrate the imposing burden such a standard represents, of more apt analogy to the present case is the less restrictive "rational basis" test applied to equal protection claims against state action that implicates no fundamental right or suspect classification. Under both the rational basis and strict scrutiny tests, a similarly high standard of proof is required of a party challenging the presumptively valid position. The rational basis test, however, presumes that the state action is valid. Such a presumption is analogous to the presumption that the minimum sentencing requirements of MCL 333.7401; MSA 14.15(7401) advance the valid legislative goal of crime deterrence.

In rational basis review cases, the state need only articulate, not prove, a legitimate state interest advanced by its action. "There is a presumption that the objectives articulated by the ordinance are the ones actually pursued," and such presumption controls " '*unless an examination of the circumstances forces . . . [the conclusion] that they could not have been a goal of the legislature.*' " *JBK, Inc v City of Kansas City, Mo,* 641 F Supp 893, 903 (WD Mo, 1986) (emphasis added), citing *Minnesota v Clover Leaf Creamery Co,* 449 US 456, 463, n 7; 101 S Ct 715; 66 L Ed 2d 659 (1981).

In *JBK,* plaintiffs brought a variety of constitutional challenges against an ordinance regulating massage parlors. In holding that the plaintiffs' substantive due process and equal protection claims did not survive the defendant's motion for summary judgment, the court noted that to survive such a motion, the party challenging the legislation must "offer evidence of a *substantial*

character (or at least an argument based upon *compelling* logic) which rebuts the presumption" of constitutional validity. *Id.* at 904 (emphasis added). The court described the argument that must be advanced by the party opposing the motion to be one that "forces the conclusion" that the goal advanced for the legislation was not an objective actually pursued. *Id.*

United States Supreme Court cases applying the rational basis test to equal protection challenges clarify what is necessary to constitute "evidence of a substantial character" and an "argument based upon compelling logic" rebutting a presumption upholding state action. "[T]hose challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based *could not reasonably be conceived to be true* by the governmental decision-maker." *Vance v Bradley,* 440 US 93, 111; 99 S Ct 939; 59 L Ed 2d 171 (1979) (emphasis added). Parties challenging state action reviewed under the rational basis test must advance an argument precluding debate. Such challenges "cannot prevail so long as 'it is evident from all the considerations presented . . . that the question is at least debatable.'" *Clover Leaf Creamery Co, supra* at 464. "[I]t is the very admission that the facts are arguable that immunizes from constitutional attack" the statute being challenged. *Vance, supra* at 112.

It is the need for an argument that "forces the conclusion" that the presumptive rule should not be applied that I would find to be at the crux of the "substantial and compelling reasons" of § 4, and makes the rational basis test a valuable tool for understanding this standard. As noted several times, the "overarching intent" of MCL 333.7401; MSA 14.15(7401) is "to deter people from committing drug-related crimes." Like the legitimate state

interest advanced under a rational basis review,
this legislative intent is presumed to be advanced
by the imposition of at least the minimum sen-
tences commanded by the statute. It is only when
a defendant advances an argument that convinces
a court that the legislative intent "could not rea-
sonably be perceived" to be advanced by imposi-
tion of the minimum sentence in the case, that
"substantial and compelling reasons" for depar-
ture from the minimum sentence have been artic-
ulated. Thus, as long as it is evident from all the
considerations presented that the question of de-
parture from the statutory minimum is debatable,
no substantial reasons compelling departure from
the minimum should be found. In effect, the bur-
den of proof is to satisfy the sentencing court that
in the circumstances presented no reasonable leg-
islative or judicial decisionmaker would impose the
mandatory minimum sentence.

IV

The standard described is a difficult but not
impregnable barrier to a defendant convicted of a
drug offense under MCL 333.7401; MSA
14.15(7401). For example, where a defendant sub-
stantially assists after arrest in the investigation
or prosecution of another defendant, where such
cooperation is verified by the proper authorities,
departure below the minimum may be in order.
See 18 USC 3553(e); USSG § 5K1.1. Imposition of
the statutory minimum sentence where the defen-
dant has provided assistance would discourage
future cooperation, because other defendants per-
ceive that no benefit can be derived from their
action.[4] Without such assistance, the task for au-

---

[4] Cooperation with police is clearly an act fraught with the poten-
tial for great risk to the defendant's personal safety. Providing such
assistance may thus be a strong indication of rehabilitative potential.

thorities in continuing to fight drug activity is
made more difficult, and aggregate deterrent effect
on the continued commission of drug crimes—the
fundamental goal of MCL 333.7401; MSA
14.15(7401)—is thus retarded by the failure to
deviate from the statutory requirements. However,
although the Legislature has given the trial courts
a stringent standard of discretion, confined in its
exercise, it does not follow that other circum-
stances of a uniquely substantial and compelling
character so as to compel deviation below the
statutory minimum sentences may not be shown.
As the legislative history clearly indicates, *ante* at
64-65, the Legislature also intended to allow flexi-
bility in individual circumstances. The long and
tortured history of judicial efforts to define "sub-
stantial and compelling" by reference to some
touchstone that does not negate the express legis-
lative preference is a graphic illustration that we
are not well served by resort to amorphous terms
like "substantial and compelling" without defining
what is meant, if only by example. Where a stat-
ute prescribes a serious penalty on the one hand,
and on the other invites avoidance by judicial
construction, the underlying policy decisions have
simply been shifted to another forum. In lieu of
legislative guidance, I would resort to the stan-
dards inherent in any formulation of burden of
proof and burden of persuasion. The defendant
must come forward with evidence, and it must be
sufficient to convince the trial court that no rea-
sonable decisionmaker would impose the minimum
sentence ordinarily assessed.

V

In summary, the presumption exists that no
lesser minimum sentence than that prescribed by

the statute should be imposed. Where the defendant advances and proves substantial and compelling reasons that permit the conclusion that no reasonable decisionmaker would impose the statutory minimum, departure is permissible.

Where the imposition of the statutory minimum is debatable or arguable, departure below the minimum is precluded.

CAVANAGH, J. (*dissenting*).

I

The issue presented in the instant case is whether the Legislature intended to limit the *types* of factors that a sentencing court may consider in determining whether "substantial and compelling" reasons exist for a departure from a mandatory minimum sentence, pursuant to MCL 333.7401(4); MSA 14.15(7401)(4). After examining the statutory language, and after considering the legislative intent, I would hold that the Legislature specified that the controlled substance sentencing departure from the mandatory minimum sentence threshold is a substantial and compelling reason. The Legislature did not specify any limitations on the types of factors a sentencing court may consider, nor did it specify the appropriate weight to be given any traditional sentencing factors. Therefore, a sentencing court may consider the individual circumstances of a case, i.e., all the factors and circumstances surrounding the offender and the offense. Moreover, because sentencing relates to *this* defendant, and to *this* sentencing judge, then, *by definition,* the weighing of all the factors and circumstances before the sentencing court must be subjective.

I respectfully dissent because the majority is

improperly adding limitations to judicial discretion that the Legislature has not intended.

## II

In the instant case, the defendant pleaded guilty of possession with intent to deliver 50 to 225 grams of cocaine.[1] Consequently, the applicable statutory term of imprisonment was "not less than 10 years nor more than 20 years." MCL 333.7401(2)(a)(iii); MSA 14.15(7401)(2)(a)(iii). The statute also provides:

> The court may depart from the minimum term of imprisonment authorized under subsection (2)(a)(ii), (iii), or (iv) if the court finds on the record that there are *substantial and compelling* reasons to do so. [MCL 333.7401(4); MSA 14.15(7401)(4). Emphasis added.]

The "substantial and compelling" provision first appeared in SB 277 (Substitute H-2), which was enacted as 1987 PA 275. At that time, the Legislature *reduced* the mandatory minimum terms of imprisonment with the idea that the lower minimum terms would be more readily imposed. House Legislative Analysis, SB 277 (Substitute H-2), First Analysis, December 16, 1987. The bill also allowed departures from these mandatory minimums for substantial and compelling reasons. The recognized importance of judicial sentencing discretion emerged among the arguments supporting the bill:

> By reducing certain minimum terms, and allowing judges to depart from them, the bill would moderate what has been an *uncompromising* law and *would give judges greater flexibility* in making sentencing decisions based on the *individual cir-*

[1] MCL 333.7401; MSA 14.15(7401).

*cumstances of a case.* At the same time, strong measures for major controlled substance violations would be retained. [Senate Fiscal Agency Analysis, SB 277 (as enrolled) (1987 PA 275), Revised Third Analysis, January 5, 1989. Emphasis added.]

In 1989 PA 143, the Legislature doubled the mandatory minimum sentences. It did not change the "substantial and compelling" standard.

Until today, we have not specifically addressed the issue before us now. However, in *People v Schultz*, 435 Mich 517; 460 NW2d 505 (1990),[2] four members of this Court underscored the importance of judicial discretion in sentencing under this statute. Justice ARCHER[3] noted that even though the Legislature increased the mandatory minimum terms of imprisonment in 1989, it retained the departure policy. He added:

Thus, the legislative mandate is clear: The sentencing courts of this state are authorized to exercise discretion and, in appropriate cases presenting substantial and compelling circumstances, to depart from the Public Health Code's mandatory minimum terms. [*Id.* at 531.]

Justice BOYLE, in her concurring opinion, also stated:

I have confidence that the trial judiciary of this state will apply today's decision in a manner that implements a public policy that decries the scourge of drugs while reflecting, *in appropriate cases, the equally important belief* that only the rarest individual is wholly bereft of the capacity for redemption. [*Id.* at 533-534. Emphasis added.]

[2] There, the issue was whether the amendments of the controlled substance statute should be applied retroactively.

[3] Justice LEVIN and I concurred.

III

I turn now to the history of the misguided addition of the "objective and verifiable" limitation to the statutory "substantial and compelling" standard.

The scope of "substantial and compelling" was first addressed by the Court of Appeals in *People v Downey,* 183 Mich App 405; 454 NW2d 235 (1990). After observing that the Legislature did not define "substantial and compelling," the *Downey* panel looked to dictionary definitions of those terms and to statutes of Minnesota and Washington, which also used the "substantial and compelling" standard.[4]

After reviewing the history of sentencing in

---

[4] Those statutes expressly limited the acceptable mitigating factors to consideration of the facts of the crime. The Minnesota statute provided that the following factors were permissible for departures:

"(1) The victim was the aggressor . . . .
"(2) The offender played a minor or passive role . . . .
"(3) The offender . . . lacked substantial capacity . . . when the crime was committed. . . .
"(4) Other substantial grounds exist which tend to excuse or mitigate the offender's culpability . . . ." [*Downey* at 411, quoting Minnesota Sentencing Guidelines II.D.2.a (1988).]

The Washington statute similarly provided:

"(a) To a significant degree, the victim was the initiator . . . .
"(b) Before detection, the defendant compensated, or made good faith effort to compensate, the victim . . . .
"(c) The defendant committed the crime under duress, coercion, threat, or compulsion . . . .
"(d) The defendant . . . was induced by others to participate in the crime.
"(e) The defendant's capacity . . . was significantly impaired . . . .
"(f) The offense was principally accomplished by another . . . ." [*Id.* at 411-412, quoting Wash Rev Code Ann 9.94A.390(1).]

Michigan, the *Downey* panel properly noted that the rehabilitative potential of the individual is an appropriate factor for the sentencing court to consider.[5] The *Downey* panel provided a "nonexhaustive" list of appropriate factors to consider:

(1) the facts of the crime which mitigate defendant's culpability . . . , (2) defendant's prior record, (3) defendant's age, and (4) defendant's work history. [*Id.* at 414-415.]

The panel then stated:

We should, however, state that the term "substantial and compelling" *implies* that the factor must be capable of verification and thus is an objective standard as opposed to a subjective one. For example, a defendant's prior criminal record is

---

The panel found these statutes distinguishable because the general sentencing guidelines in Minnesota and Washington had already taken into consideration the individual characteristics of the offender in determining the presumptive ranges *before* applying the expressly limited mitigating reasons in the "substantial and compelling" statute. *Id.* at 412-413.

[5] The *Downey* panel stated:

The Michigan Supreme Court in *People v Snow,* 386 Mich 586, 592; 194 NW2d 314 (1972), found the following factors to be proper criteria in determining the length of sentences: (1) the disciplining of the wrongdoer, (2) the protection of society, (3) the potential for reformation of the defendant, and (4) the deterring of others from committing similar offenses. The Legislature's imposition of presumptively mandatory sentences for certain drug offenses reflects the Legislature's, and thus society's, determination that the length of the sentences contained in the statute are necessary to discipline the offender, to protect society and to deter others from committing drug offenses. The statutory amendment allowing deviation in exceptional circumstances reflects a desire to give judges some flexibility in making sentencing decisions based upon individual circumstances. . . . For these reasons we believe that the factors which go into determining the rehabilitative potential of the defendant may be considered when determining if substantial and compelling reasons exist to deviate from the presumptive sentence. [*Id.* at 414. Citation omitted.]

readily verifiable and objective. On the other hand, a defendant's protestations of remorse and his actions after his arrest which are relied upon to show his remorse and rehabilitative potential are much more subjective and thus would not, absent other exceptional circumstances, be appropriate factors to consider. [*Id.* at 415-416. Emphasis added.][6]

The *Downey* panel had to *infer* an "objective" limitation because there was no such direction from the Legislature. It further illustrated the difficulties of drawing an objective/subjective line by its attempt to characterize *external* actions as subjective. I think actions are observable by others and they are, therefore, verifiable.

The difficulties of an arbitrary objective/subjective line were illustrated in *People v Krause,* 185 Mich App 353; 460 NW2d 900 (1990). The *Krause* panel adopted the "objective and verifiable" limitation, but disagreed with the *Downey* panel's conclusion regarding the "subjectivity" of certain factors. The *Krause* majority stated:

[W]e disagree with the *Downey* panel's conclusion that, because an action is taken or an incident occurs after a defendant's arrest, such action or incident becomes subjective. . . . The fact that a defendant expresses remorse, whether orally or in writing, is an objective action which can be confirmed. However, a defendant's intent when he expresses remorse is within his own mind and is, therefore, subjective. It cannot be confirmed by his own statement. Consequently, his mere protestation of remorse should not be considered as a

---

[6] In its review of the individual cases, the panel rejected the following factors that had been used by the sentencing courts: postarrest enrollment in college and volunteer work, expressions of remorse, strong family support, and postarrest cooperation with the police. The panel accepted such factors as: lack of a prior record, minor role in the crime, and regular work history. *Id.* at 417-420.

balancing factor for determining substantial and compelling reasons to depart from the mandatory sentence.

On the other hand, a defendant's active involvement in volunteer work, or cooperation with the police after his arrest, are events which exist outside the minds of the persons involved in deciding the defendant's sentence and can be verified. . . . It is only when the sentencing court, upon an evaluation of all the objective, verifiable information, reaches the conclusion that the collective facts provide substantial and compelling reasons to depart from the mandatory sentence that it may, in the exercise of discretion, decide to do so. [*Id.* at 358-359. Citation omitted.]

Judge GRIFFIN wrote the majority opinion in *People v Troncoso,* 187 Mich App 567; 468 NW2d 287 (1991), which became temporarily binding on the Court of Appeals under the first-out rule of Administrative Order No. 1990-6. Judge GRIFFIN reviewed principles of statutory construction, found that the terms "substantial and compelling" were undefined by the Legislature, and looked to common dictionary definitions. He concluded:

In light of these definitions and the Legislature's expressed intent to expand sentencing discretion, we cannot subscribe to the *Downey* restrictions which limit the sentencing court's consideration to prearrest factors capable of objective verification. The terms used by the Legislature plainly contemplate a broader scope of relevant criteria. . . . The litmus test invented by the *Downey* panel is a creative construction of a penal statute which is unsupported by any legislative history and not evident from a fair reading of the words used by the Legislature. [*Id.* at 574.][7]

_____

[7] Judge GRIFFIN quoted the *Downey* nonexhaustive list of four factors and concluded:

In *People v Hill,* 192 Mich App 102; 480 NW2d 913 (1991), a superpanel majority resolved the conflict in the Court of Appeals panels by adopting the *Downey* and *Krause* approach. In so doing, the *Hill* majority quoted and relied upon a legislative analysis that was written in 1978. In particular, the *Hill* majority quoted an argument against mandatory sentences that advocated greater sentencing discretion. *Id.* at 116-117, quoting House Legislative Analysis, HB 4190, Third Analysis, May 17, 1978. The majority stated: "This latter point of view was obviously rejected when the mandatory minimum sentencing statutes were adopted." *Hill* at 117.

What is "obvious," is that in 1987-88, some ten years later, this "latter view" was clearly reflected in the addition of § 7401(4). The *Hill* majority not only took statements out of context (by completely ignoring the accompanying statements in 1987-88 regarding increasing judicial discretion), it also relied on statements made in another time frame. The majority improperly failed to recognize that, in 1987-88, the Legislature did *not* reenact the approach that the majority claimed to be giving effect to. This fatal flaw in the majority's analysis led it to overemphasize the legislative intent to stiffen drug penalties, by *completely disregarding* the accompanying legislative intent to increase judicial sentencing discretion, and to give relief

---

We adopt and affirm this *non*exhaustive list of factors but reject *Downey*'s objective, verifiable, and prearrest-conduct limitations. While we agree that the sentencing judge does not possess "unfettered discretion" to depart from the presumptive minimums, discretion nevertheless exists in appropriate cases. We hold that the articulated reasons for deviation need not necessarily be "objective" and "verifiable" so long as they are "substantial and compelling." The parameters of the limited judicial discretion afforded by the statute will become more clearly defined through our case by case review. [*Id.* at 577.]

from "an uncompromising law." Senate Fiscal Agency Analysis, SB 277 (as enrolled) (1987 PA 275), Revised Third Analysis, January 5, 1989.

The *Hill* majority further stated:

> Regardless of whether the original mandatory minimum sentencing statutes and subsequent amendments have the desired results, we find that if trial judges can use factors that are both subjective and not verifiable, they would have freedom to depart from the mandatory minimum *for almost any reason* they choose to use and they would hold in their hands the power to defeat the legislative purpose at will, *subject only* to review for abuse of discretion and lack of proportionality under *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), the same standards that apply to sentences that are not mandatory. [*Id.* at 118. Emphasis added.]

The *Hill* majority exaggerated the extent of the sentencing court's discretion. I believe that the review standard is higher than the *Milbourn* proportionality standard. The Legislature has established the standard of review of discretion, and that standard is substantial and compelling reasons—not just "any" reason.[8]

The *Hill* panel continued:

> The threshold decision that the trial judge must make is whether there are substantial and compelling reasons to depart from the mandatory mini-

---

[8] The *Hill* majority also stated:

> The Legislature appears to have spoken in a manner that indicates that mandatory minimum sentences are required in order to rid society of the scourge of drugs and that exceptions to mandatory minimum sentences should be in only rare and exceptional cases where the original legislative purpose would not be defeated. [*Id.* at 118.]

While I may disagree with the policy, I agree that this was one of the Legislature's goals.

mum sentence . . . . It is with respect to this
threshold decision that the Legislature has evi-
denced its intent to limit to extreme cases depar-
ture from the statutory minimum sentence. How-
ever, once the trial court determines that there
are substantial and compelling reasons to depart
from the statutory minimum sentence, *there are
no limits in the statute of the factors* that the trial
judge may apply in deciding how far below the
statutory minimum sentence the court should go.
[*Id.* at 119. Emphasis added.]

That is the whole point. The Legislature speci-
fied no limitations on the types of factors the
sentencing court may consider. It only specified
the threshold that the sentencing court must
reach, and that threshold is that the circum-
stances of the case must establish a substantial
and compelling case for a sentencing departure.

Judge GRIFFIN, in his dissent in *Hill,* adhered to
his approach in *Troncoso:*

There is nothing in the language of the statute
or its legislative history that limits the discretion
of sentencing judges to consideration of only those
sentencing factors that are both "objective" and
"verifiable." Such restrictions are neither ex-
pressed nor implied in the law. The statute re-
quires the articulated reasons for departure to be
"substantial and compelling," nothing more, noth-
ing less.

The majority has chosen to rewrite the statute
at issue. Its use of preamendment legislative his-
tory is puzzling. It appears that the majority relies
upon the Legislature's now-discarded intent of
permitting no deviation from the mandatory mini-
mums only because there is no support for *Downey-
Krause* in the legislative history of the 1987-
1988 amendments.

The test created by the majority is a judicial
invention never contemplated by the Legislature.

The key terms "objective" and "verifiable" remain undefined and are therefore unworkable. We cannot look to the Legislature for guidance, because the Legislature has not used these terms.

The problem of applying such vague standards is readily apparent in this case. Whether defendant Hill's substantial family support is an "objective" and "verifiable" sentencing factor is anyone's guess. [*Id.* at 121.]

After *Hill*, the Court of Appeals has addressed numerous factual challenges under the "substantial and compelling" standard. If anything, I think the cases indicate that the "objective and verifiable" limitation is unworkable.

One good demonstration of the problem is found in *People v Harvey*, 203 Mich App 445; 513 NW2d 185 (1994). The *Harvey* panel stated:

In this case, the trial court made objective findings that defendant had no prior record . . . and was thirty-three years of age at the time of his arrest. He also had *strong family support* and had been steadily employed at General Motors for fourteen years. In addition, he had been on a tether program (for the less serious conviction) for about a year before being sentenced for the instant offense and had been, in the words of the trial court, "an exemplary probationer." *We find no clear error in the trial court's determination* that there were substantial and compelling reasons for a downward departure. [*Id.* at 448-449. Emphasis added.]

Notice that "family support" was one of the factors expressly rejected in *Downey*. The *Hill* majority intended to limit sentencing court discretion. But, by using circular terms, it has not limited appellate court discretion—if the appellate court wants to uphold a particular sentence depar-

ture, it need only state that the factors were objective and verifiable. If the appellate court wants to vacate the departure, it need only state that the factors were subjective. Is "family support" objective or is it subjective? There is no absolute answer. That is the flaw with an arbitrary objective/subjective test. The proper inquiry should be whether the nature and the extent of this defendant's family's support rise to the level of substantial and compelling reason, in the mind of this sentencing judge, to depart from the mandatory minimum sentence.

IV

In the case at bar, the majority concludes that "substantial and compelling" reasons should be limited by the "objective and verifiable" test that was approved in *Hill*. The majority argues that this limitation will better serve the Legislature's' intent. BRICKLEY, C.J., *ante* at 69-70. It states further that leaving the interpretation of "substantial and compelling" to sentencing courts "belies the legislative purpose" in enacting this statute. *Id.* at 70. The majority has ignored the other legislative intent to "give judges greater flexibility in making sentencing decisions based on the individual circumstances of a case." Senate Fiscal Agency Analysis, SB 277 (as enrolled) (1987 PA 275), Revised Third Analysis, January 5, 1989.

I am troubled by many of the majority's "observations" in part IV. For instance, the majority states that mitigating circumstances surrounding the offense should appropriately be given "considerable weight in deciding whether to depart from the statutory minimum." BRICKLEY, C.J., *ante* at 76. The majority finds such circumstances "*especially compelling*" because of the possibility that

the Legislature did not consider this type of behavior when it set the statute's harsh minimum sentences." *Id.* at 76 (emphasis added). My first response is that the Legislature is presumed to know what it is doing.[9] Moreover, if the Legislature did *not* know what it was doing, the argument becomes even stronger that sentencing courts should have broader sentencing discretion. And, finally, I do not see how a mere "possibility," which may or may not be true, can ever be "especially compelling."

I would further add that if a factor can count both for and against the defendant, then, *by definition,* the sentencing court must have the ability to *subjectively* consider all the circumstances that surround the particular offender and the particular offense.

For example, the educational background of the defendant *may* directly suggest rehabilitative potential.[10] For instance, an individual who has put himself through college reveals his ambition to try to improve his life. Moreover, whatever grades and success that the individual achieved in pursuing an education are personal achievements—not simply advantages of status. By comparison, an individual who, by accident of birth, comes from a wealthy status and yet fails to be graduated from high school or college, has perhaps revealed a lack of ambition, and, consequently, the educational

[9] "It is a well-known principle that the Legislature is presumed to be aware of . . . all existing statutes when enacting new laws." *Walen v Dep't of Corrections,* 443 Mich 240, 248; 505 NW2d 519 (1993). See *People v Schultz, supra* at 543-544 (BRICKLEY, J., dissenting): "[T]he Legislature is presumed to act with knowledge of existing law." Therefore, the Legislature would be presumed to know of the novelty of lesser-included offenses, and would be presumed to know that a particular defendant can be less culpable, and can be convicted of a less serious crime than coactors.

[10] See *Downey* at 414 (rehabilitative potential is an appropriate consideration in sentencing).

background may suggest *lack* of rehabilitative potential.

Likewise, an employment history can reveal characteristics of this individual and may well better inform the sentencing judge about his culpability and rehabilitative potential. A work history *can* be bad. An individual who, for no particular reason, drifts from job to job reveals a lack of persistency. By the same measure, consider an individual who, by accident of birth, lives in an area with high unemployment and low standards of living. If that individual has persistently tried to hold a job, even if unsuccessfully, that individual again has revealed an ambition to try to improve his life. In such a case, I would argue that the individual's specific work history should legitimately be considered as a factor. Moreover, because the individual's work history can work either for or against that particular individual, then, by definition, the sentencing court must have the ability to subjectively consider all the circumstances that surround the particular offender and the particular offense.

Additionally, an individual's age can count both for and against that particular individual, and consequently, its significance must fall within the subjective discretion of the sentencing court.

In sum, because individual offenders and individual offenses involve radically different circumstances, by definition, the totality of the circumstances must be considered by the sentencing court in determining whether substantial and compelling reasons exist to depart from the statutory minimum sentence.

V

In § 7401(4), the Legislature did not define "sub-

stantial and compelling." Clearly, the statute provides that one or more factors must be deemed substantial and compelling to the trial court that is sentencing the individual defendant. I believe that there could be no universal agreement about what rises to the level of substantial and compelling. It relates to *this* defendant and to *this* sentencing judge, who is examining *this* individual and *this* offense. If this type of discretion is not what the Legislature intended, it can and will say so. It certainly could have enumerated all the factors and the respective weight to be given to each.

Starting from the premise that the Legislature is presumed to be familiar with the principles of statutory construction,[11] it can be presumed that the Legislature intended that the Court first apply the plain meaning rule of statutory construction. Further, the Legislature can be presumed to know that the Court will also seek "to give effect to legislative intent." *Gardner v Van Buren Public Schools,* 445 Mich 23, 44; 517 NW2d 1 (1994) (citation omitted). Under the plain meaning rule of statutory construction, the legislative intent is ascertained from what the Legislature said, not from what it *could* have said.[12] There is absolutely no direction from the Legislature in either the language of § 7401(4), or in the legislative history surrounding its enactment, that we should limit substantial and compelling reasons to "objective" factors. Therefore, I cannot agree with the majority's assertion that this was the Legislature's intent.

I agree that the factors must be verifiable—for the simple premise that a reviewing court must

---

[11] *People v Hall,* 391 Mich 175, 190; 215 NW2d 166 (1974).

[12] 2A Singer, Sutherland Statutory Construction (5th ed), § 46.01, p 82 (citation omitted).

have an evidentiary basis to review the sentencing court's discretion. Therefore, the evidentiary basis logically must be verifiable. But how the individual factors are weighed, by definition, must be subjective.

I cannot make the leap to an "objective" limitation that the *Downey* panel made. I think Judge GRIFFIN correctly predicted that the test is unworkable. *Harvey* demonstrates that a reviewing court can twist the "objective" linguistics test to support a desired result. For instance, is extreme remorse purely subjective if the defendant demonstrates outward signs of it? Again, one reviewing court can state that the remorse is subjective and reject the factor; another reviewing court can state that the remorse is objective and accept the factor. The better test is whether the sentencing judge is satisfied that the nature and the extent of the defendant's remorse are substantial and compelling reasons to support a sentencing departure.

The Legislature could have expressly listed appropriate mitigating or aggravating factors. For comparison, we can look at sentencing provisions used by other legislatures. For instance, a Rhode Island statutory provision uses the "substantial and compelling" standard, but, unlike our statute, *expressly limits* what may be considered substantial and compelling. For illegal possession of quantities of one ounce to one kilogram of a controlled substance, the statute provides:

> In all such cases, the justice imposing sentence shall impose a minimum sentence of ten (10) years imprisonment and may only impose a sentence less than that minimum if he or she finds that substantial and compelling circumstances exist which justify imposition of the alternative sentence. Such a finding may be based upon the character and background of the defendant, the

cooperation of the defendant with law enforcement authorities, the nature and circumstances of the offense, and/or the nature and quality of the evidence presented at trial. If a sentence which is less than imprisonment for a term of ten (10) years is imposed, the trial justice shall set forth on the record the circumstances which he or she found as justification for imposition of the lesser sentence. [RI Gen Laws 21-28-4.01.1.][13]

Likewise, a Florida statute provides mandatory minimum sentences when greater amounts of a controlled substance are involved; offenders with lower amounts of a controlled substance are sentenced according to the sentencing guidelines.[14] The statute contains a sentencing departure provision that is limited to motions from the government based on the defendant's substantial assistance to law enforcement agencies:

The state attorney may move the sentencing court to reduce or suspend the sentence of any person who is convicted of a violation of this section and who provides substantial assistance in

---

[13] Nearly identical language is used for quantities over one kilogram. RI Gen Laws 21-28-4.01.2.

[14] For instance, one section provides:

Any person who knowingly sells, purchases, manufactures, delivers, or brings into this state, or who is knowingly in actual or constructive possession of 28 grams or more of cocaine . . . but less than 150 kilograms of cocaine . . . commits a felony of the first degree, which felony shall be known as "trafficking in cocaine." If the quantity involved:

a. Is 28 grams or more, but less than 200 grams, such person shall be sentenced pursuant to the sentencing guidelines and pay a fine of $50,000.

*  *  *

c. Is 400 grams or more, but less than 150 kilograms, such person shall be sentenced to a mandatory minimum term of imprisonment of 15 calendar years and pay a fine of $250,000. [Fla Stat Ann 893.135(1)(b)1.]

the identification, arrest, or conviction of any of that person's accomplices, accessories, coconspirators, or principals or of any other person engaged in trafficking in controlled substances. The arresting agency shall be given an opportunity to be heard in aggravation or mitigation in reference to any such motion. Upon good cause shown, the motion may be filed and heard in camera. The judge hearing the motion may reduce or suspend the sentence if the judge finds that the defendant rendered such substantial assistance. [Fla Stat Ann 893.135(4).]

Statutes in Alabama, Delaware, Georgia, Idaho, and Nevada also track this language, i.e., mandatory minimums may be reduced *only* on a motion from the government based on the defendant's substantial assistance to law enforcement agencies.[15]

These statutes are specific—Michigan's is not. The argument that departures should be limited to "substantial assistance" cases does not apply to the Michigan situation because the statute itself does not limit the *types* of reasons that may be substantial and compelling.[16]

---

[15] Ala Code 13A-12-231, 13A-12-232(b) (prosecutor); Del Code tit 16, 4753A(c) (Attorney General); Ga Code Ann 16-13-31(f)(2) (district attorney); Idaho Code 37-2732B(8) (prosecuting attorney); Nev Rev Stat 453.3385, 453.339, 453.3395, 453.3405(2) (appropriate motion).

[16] The federal sentencing scheme also statutorily defines limited judicial discretion in imposing statutory minimum sentences. See 18 USC 3553(e):

Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person . . . .

See also Lowenthal, *Mandatory sentencing laws: Undermining the effectiveness of determinate sentencing reform,* 81 Cal L R 61 (1993) (for summary of the federal sentencing procedure). This commentator explained the departure grounds:

Another example is a Kansas statute that provides a presumptive sentencing grid that is drug-crime specific. The statute specifically lists aggravating factors in drug crimes that "may be considered in determining whether substantial and compelling reasons for departure exist . . . ." Kan Stat Ann 21-4717 (as amended by 1994 Kan Sess Laws 341, § 3).[17] A non-drug-specific provision of

The principal grounds for departure from applicable guidelines ranges are set forth in [Guidelines Manual] §§ 5K1.1, 5K2.0. The first of these provisions permits the court to depart from the guidelines on motion by the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person. . . . The second provision permits a departure if the court finds " 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' " [Id. at 89, n 127, quoting Guidelines Manual, quoting 18 USC 3553(b). Citations omitted.]

[17] The statute provides:

The following aggravating factors, which apply to drug crimes committed on or after July 1, 1993, under the sentencing guidelines system, may be considered in determining whether substantial and compelling reasons for departure exist:

(1) The crime was committed as part of a major organized drug manufacture, production, cultivation or delivery activity. Two or more of the following nonexclusive factors constitute evidence of major organized drug manufacture, production, cultivation or delivery activity:

(A) The offender derived a substantial amount of money or asset ownership from the illegal drug sale activity.

(B) The presence of a substantial quantity or variety of weapons or explosives at the scene of arrest or associated with the illegal drug activity.

(C) The presence of drug transaction records or customer lists that indicate a drug sale activity of major size.

(D) The presence of manufacturing or distribution materials such as, but not limited to, drug recipes, precursor chemicals, laboratory equipment, lighting, irrigation systems, ventilation, power-generation, scales or packaging material.

(E) Building acquisitions or building modifications including but not limited to painting, wiring, plumbing or lighting which advanced or facilitated the commission of the offense.

(F) Possession of large amounts of illegal drugs or substantial quantities of controlled substances.

the Kansas statute provides a "nonexclusive list of mitigating factors [that] may be considered in determining whether substantial and compelling reasons for a departure exist . . . ." Kan Stat Ann 21-4716 (as amended by 1994 Kan Sess Laws 341, § 2).[18]

In sum, the Michigan Legislature has not expressly provided any limitations on the types of factors to be considered, or the weight to be given any particular factor in the statute at issue in the instant case. Section 7401(4) simply provides that if the sentencing court finds substantial and compelling reasons to depart from the minimum term, it may do so.

The majority misses the point when it reviews other *statutory* schemes to reinforce its "belief" that the Michigan Legislature had a corresponding intent. If the Michigan Legislature had wanted to

---

(G) A showing that the offender has engaged in repeated criminal acts associated with the manufacture, production, cultivation or delivery of controlled substances.

(2) The offender possessed illegal drugs:

(A) With intent to sell, which were sold or were offered for sale to a person under 18 years of age; or

(B) with the intent to sell, deliver or distribute or which were sold or offered for sale in the immediate presence of a person under 18 years of age.

(3) The offender, 18 or more years of age, employs, hires, uses, persuades, induces, entices or coerces any individual under 16 years of age to violate or assist in avoiding detection or apprehension for violation of any provision of the uniform controlled substances act K.S.A., . . . regardless of whether the offender knew the age of the individual under 16 years of age.

[18] The list includes:

The victim was an aggressor or participant . . . .

The offender played a minor or passive role in the crime . . . .

The offender . . . lacked substantial capacity . . . [and]

The degree of harm . . . was significantly less than typical for such an offense. [Kan Stat Ann 21-4716 (as amended by 1994 Kan Sess Laws 341, § 2).]

limit the sentencing court to enumerated factors, it could certainly have done so. The Michigan Legislature chose not to. Because the Legislature chose not to, I believe that the majority is improperly limiting the scope of judicial sentencing discretion.

VI

In the instant case, the defendant, who had no prior convictions, pleaded guilty of one count of possession with intent to deliver more than 50 but less than 225 grams of cocaine. Under the statute, the mandatory sentence was ten to twenty years. The sentencing judge found substantial and compelling reasons to depart from the mandatory sentence and imposed a five- to twenty-year sentence. The judge explained:

> All right. Well, the Court is satisfied, and the record should reflect that I have read the presentence report, the letters that came on your behalf, both the sentencing memos, and I am satisfied that the law applicable, at this time, is *People v Troncoso,* 187 Mich App 567, decided in 1991. *Troncoso* indicates that absent a statutory definition or controlling judicial definition, we must comply with the legislative directive to construe statutory language according to the common and approved usage of the words.
> I'm satisfied that there are some factors here that would allow this Court to come to the conclusion that there are some—that there is substantial and compelling reason to deviate from the mandatory 10-year sentence. However, I would agree with the Prosecutor that this problem, regarding cocaine, is a terrible problem that is absolutely just—not only—I'll start over. It's a cancer and, you know, with the amount of drugs that were involved here, clearly incarceration would be appropriate.

I'm satisfied that the basis for my deviating from the mandatory 10-year is that you're a young man of 24 years of age and you have no prior record. I'm also satisfied—standing alone obviously wouldn't matter but you just were over the 50 gram mark, the 54 grams. This appears to be, based upon the record, your only involvement that can be established.

You had a good job for over five years with a good work record, and I'm taking into consideration the extreme remorse that I see from you. You are devastated by this. You've admitted your guilt, and you've accepted your responsibility.

You've got family friends and co-workers, as evidenced by the letters, indicate you do—are a person capable of rehabilitation. I think you have a potential for rehabilitation, and I'm satisfied that your motivation to help others, although totally in some respects outbalanced, at least it indicates that you're not a cold, callous drug dealer out to profit solely for your own benefit.

Taking all these into consideration, I'm satisfied that there will be a deviation, but there has to be a significant penalty for someone who sells in excess of 50 grams of cocaine for approximately $2,300 at street value.

Therefore, taking all those factors into consideration, it will be sentence and judgment of this Court [that] you be confined to the jurisdiction of the Michigan Department of Corrections for a minimum term of five years and a maximum term of 20 years . . . .

The Court of Appeals reversed and remanded for resentencing because the sentencing court relied on factors that were improper under *Hill.*[19]

I find that the sentencing court thoroughly examined both positive and negative circumstances of the case before it. I see no abuse of discretion in

[19] Unpublished memorandum opinion of the Court of Appeals, issued February 19, 1993 (Docket No. 147473).

its determination that substantial and compelling reasons for a sentencing departure existed.

### VII

In conclusion, the Legislature provided the threshold for controlled substance sentencing departures: substantial and compelling reasons. This is not unlimited discretion. The evidentiary record will have to demonstrate to a reviewing court that such reasons exist. I find that such a record exists in the case at bar. Therefore, I would reverse the Court of Appeals decision and reinstate the trial court's sentence, because the sentencing departure was based on substantial and compelling reasons.

LEVIN, J., concurred with CAVANAGH, J.

WEAVER, J., took no part in the decision of this case.