# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

UNPUBLISHED
May 5, 2015

v

ANTHONY JEROME BEATY,

Defendant-Appellant.

No. 314935
Otsego Circuit Court
LC No. 11-094342-FC

---

Before: BORRELLO, P.J., and RONAYNE KRAUSE and RIORDAN, JJ.

PER CURIAM.

Defendant pleaded guilty to delivery of a controlled substance causing death, MCL 750.317a, and maintaining a drug house, MCL 333.7405(1)(d). Defendant admitted that on or about January 1, 2011, he sold heroin to Konrad Pressley, who gave it to Aubrey Checks. Checks later overdosed and died. In exchange for his plea, the prosecutor dismissed charges of possession with intent to deliver less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*), delivery of less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*), conducting a criminal enterprise, MCL 750.159i(1), and possession of marijuana, MCL 333.7403(2)(d). The prosecutor also dismissed a habitual offender second offense notice. The trial court departed upward from the sentencing guidelines, sentencing defendant to concurrent terms of 20 to 50 years' imprisonment for the delivery of a controlled substance causing death conviction and 16 to 24 months' imprisonment for the maintaining a drug house conviction. For the reasons set forth in this opinion, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

## BACKGROUND

In the present case, defendant's minimum sentence range for his delivery of a controlled substance causing death conviction was 81 to 135 months. However, the trial court believed that an upward departure was appropriate and sentenced defendant to 20 to 50 years' imprisonment for that conviction. In imposing its sentence, the trial court first stated that the charge was "very serious," as heroin is "well known to be a lethally dangerous drug." The trial court also found defendant's drug dealing was "regular" and "substantial," as police had found 222 packets of heroin in his possession. The trial court stated that given his "large scale" dealing, he was "apparently motivated purely out of greed, hundred percent greed," and this is a small community," the court added, "and 222 packets found on—in your possession at one time—that says a lot about the volume of heroin involved here, and that's significant, and that's a problem."

The trial court next called attention to the fact that Aubrey Checks had died as a result of defendant's heroin dealing and then reiterated that it appeared that defendant had been "motivated by pure, unadulterated greed, all about the cash, the dollar." The trial court added that defendant "chose not to have any legitimate work."

The court then stated that it had "highlighted" the reasons for its departure, but said that it would "summarize them again . . ." It stated that its first reason was that defendant's "level of heroin dealing was high level, was substantial." It stated that its second reason was that defendant "did receive the benefit of a plea bargain wherein the prior conviction, habitual offender second, was dismissed." The trial court added, "I also question the accuracy of your expression of remorse today, although that's not a substantial, significant factor, but you're—you were motivated, as I said, purely by unadulterated greed." The trial court next said, "[a]nd the death of the young girl is just something that can't be overlooked . . . ." The trial court also said that the highest minimum sentence he could impose under the guidelines, 135 months, was "not long enough to get you off the streets and out of business," explaining: "You can be right back into it in 11 years without too much trouble. I think it's going to be more troublesome the longer the minimum." The trial court said that defendant "deserve[d] every year of [a 20-year minimum sentence] because of the high volume of drug dealing involved here . . . ." The trial court then apparently summarized its reasoning for the departure:

> You caused substantial suffering, and you're dealing a drug that's extremely dangerous, and you're dealing it at a high level, and you received the benefit of the plea bargain, and you need to be off the streets for a substantial period of time, and I think the sentence is fair and appropriate.

The court later concluded:

> That's the sentence of the Court. I believe it's proportional, appropriate, fair and reasonable, and it doesn't bring back the victim, of course, but it keeps you off the streets for a substantial period of time, and I think that's necessary. You're a high-level heroin dealer, and you received the benefit of the plea bargain, as I mentioned, and for all the other reasons outlined in the report, that's the sentence of the Court.

Defendant filed a delayed application for leave to appeal to this Court which was denied.[1] Defendant then applied for leave to appeal to our Supreme Court which remanded the case to this court for consideration as on leave granted.[2]

## I. SENTENCE DEPARTURE

---

[1] *People v Beaty*, unpublished order of the Court of Appeals, entered October 16, 2013 (Docket No. 314935).

[2] *People v Beaty*, 495 Mich 976; 843 NW2d 900 (2014).

On appeal, defendant first argues that the trial court erred in departing from the sentencing guidelines and sentencing him to 20 to 50 years' imprisonment for his delivery of a controlled substance causing death conviction. The sentencing guidelines had recommended a minimum sentence range of 81 to 135 months. We review the trial court's reasons for a departure for clear error. *People v Smith*, 482 Mich at 292, 300; 754 NW2d 284 (2008). "A finding is clearly erroneous when it leaves this Court with a definite and firm conviction that the trial court made a mistake." *People v Waclawski*, 286 Mich App 634, 693; 780 NW2d 321 (2009). We review de novo whether the reasons cited for departure are objective and verifiable, and whether they are substantial and compelling for an abuse of discretion. *Smith*, 482 Mich at 300. The extent of any departure is also reviewed for an abuse of discretion. *Id*. An abuse of discretion occurs when a trial court's decision falls outside the range of principled outcomes. *Id*. See also, *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

In general, once a sentencing court determines a defendant's guidelines range, it must impose a sentence within that range. MCL 769.34(2). However, the court may depart from the guidelines range if it "has a substantial and compelling reason for that departure and states on the record the reasons for departure." MCL 769.34(3). A substantial and compelling reason "must be objective and verifiable." *Smith*, 482 Mich at 299. "'To be objective and verifiable, a reason must be based on actions or occurrences external to the minds of those involved in the decision, and must be capable of being confirmed.'" *People v Anderson*, 298 Mich App 178, 183; 825 NW2d 678 (2012), quoting *People v Horn*, 279 Mich App 31, 43 n 6; 755 NW2d 212 (2008). "The reasons for departure must also 'be of considerable worth in determining the length of the sentence and should keenly or irresistibly grab the court's attention.'" *Id.*, quoting *Smith*, 482 Mich at 299. The sentencing court "cannot base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight." MCL 769.34(3)(b). A substantial and compelling reason "'exists only in exceptional cases.'" *People v Babcock*, 469 Mich 247, 258; 666 NW2d 231 (2003), quoting *People v Fields*, 448 Mich 58, 68; 528 NW2d 176 (1995).

After reviewing the court's explanation for departing from the guidelines, the trial court identified the following six reasons for the upward departure: (1) defendant dealt a large amount of heroin; (2) defendant was motivated by greed; (3) defendant received the benefit of a plea bargain; (4) Aubrey Checks died as a result of defendant's heroin dealing; (5) Checks's death had caused a substantial amount of suffering for her family; and (6) if defendant was not sentenced to a higher minimum term, he would return to dealing heroin.

The trial court's first reason for departing was, arguably, not improper. Defendant's drug dealing was objective and verifiable, as defendant admitted that he was a heroin dealer when he pleaded guilty. The extent of defendant's dealing was also objective and verifiable, as defendant admitted to the trial court's characterization that he engaged in "large-scale dealing by anybody's measure . . . ." Accordingly, the trial court's determination that the extent of defendant's heroin dealing warranted an upward departure does not fall outside the range of principled outcomes.

The trial court's second reason, however, was an improper basis to depart. Defendant's motivation for selling heroin was not objective and verifiable, as it could only exist in his mind.

In addition, defendant apparently told police that he sold heroin to support his family. This would belie the contention that defendant was "motivated by pure, unadulterated greed."

The third reason cited by the trial court was also improper. Although defendant's plea bargain is objective and verifiable, it is not substantial and compelling. That defendant received the benefit of a plea bargain is not exceptional. See *id*. In addition, the plea bargain was not overly favorable to defendant, as he pleaded guilty to delivery of a controlled substance causing death. The charge was the most serious that he faced.

The trial court's fourth, fifth, and sixth reasons were also improper. Although the death of the victim is undeniably tragic, it is not exceptional in a case where the charge is delivery of a controlled substance *causing death*. Similarly, although it is clear that Aubrey Check's family has suffered, defendant was scored 15 points under offense variable (OV) 5 because the trial court determined that "[s]erious psychological injury requiring professional treatment occurred to a victim's family . . . ." MCL 777.35(1)(a). Thus, this reason was already taken into account under the guidelines, and the trial court did not indicate that it believed that this factor was given inadequate weight. Finally, it is unverifiable whether defendant will return to dealing heroin after his release from prison, as it is impossible to confirm what will happen in the future. In fact, defendant only admitted to dealing heroin from June 2010 until January 2011, and this is his first drug-related offense.

The trial court did not state it would depart to the same extent for any of the reasons cited. Therefore, we remand for resentencing. *Babcock*, 469 Mich at 271.

## II. DUE PROCESS

Defendant next argues that he is entitled to withdraw his plea to maintaining a drug house because the trial court failed to advise him that it could impose a fine as part of his sentence. We review for an abuse of discretion a trial court's decision on a motion to withdraw a plea. *People v Cole*, 491 Mich 325, 329; 817 NW2d 497 (2012). Constitutional issues are considered de novo. *Id*. at 330.

During the plea hearing, the trial court directed defendant to look at the information, which states that the penalty for maintaining a drug house is "2 years and/or $25,000.00." This is consistent with MCL 333.7406. The following exchange then ensued:

> *Q*. . . . It's alleged in Count V that you did knowingly or intentionally keep or maintain a dwelling that was used for the keeping or selling of controlled substances in violation of Article 7 of the Public Health Code. It would be Michigan Compiled Laws 333.7101 and following and contrary to the same section but subsection 7405 and 7406. This is a high court misdemeanor, two-year maximum. Can you tell me the name of the offense in Count V?
>
> *A*. Controlled substance, maintaining a drug house.
>
> *Q*. Correct. And what's the maximum possible penalty there?

*A*. Two years.

*Q*. Correct. . . .

After this case was returned to us by our Supreme Court for consideration as on leave granted, defendant moved to withdraw his plea in the trial court, asserting the same grounds presented here on appeal. The trial court denied the motion for two reasons. First, it found that the motion was "procedurally deficient as it was filed well beyond the 6 month time limit set forth in MCR 6.310(C)." Second, it found that defendant had "failed to demonstrate that there was any type of error in the plea-taking process itself . . . ." It also found that defendant's claim was one of ineffective assistance of counsel, and that case law shows that the failure to advise a defendant regarding the collateral consequences of a plea does not warrant withdrawal of the plea.

"Guilty- and no-contest-plea proceedings are governed by MCR 6.302." *Cole*, 491 Mich at 330. As pertinent to the present case, that rule provides as follows:

> (A) The court may not accept a plea of guilty or nolo contendere unless it is convinced that the plea is understanding, voluntary, and accurate. Before accepting a plea of guilty or nolo contendere, the court must place the defendant or defendants under oath and personally carry out subrules (B)-(E).

> (B) Speaking directly to the defendant or defendants, the court must advise the defendant or defendants of the following and determine that each defendant understands:

> \* \* \*

> (2) the maximum possible prison sentence for the offense and any mandatory minimum sentence required by law, including a requirement for mandatory lifetime electronic monitoring under MCL 750.520b or 750.520c . . . .

Although both parties agree that the mandate of MCR 6.302(B)(2) was fulfilled in case at hand, this does not end the inquiry. Our Supreme Court has held that the Due Process Clause of the Fourteenth Amendment may impose additional requirements during the plea-taking process. *Cole*, 491 Mich at 332.

> "[T]he Due Process Clause of the Fourteenth Amendment requires that [a] plea be voluntary and knowing." *Id*. at 333. When a defendant pleads guilty, he "must be 'fully aware of the direct consequences' of the plea." *Id*., quoting *Brady v United States*, 397 US 742, 755; 90 S Ct 1463; 25 L Ed 2d 747 (1970). Courts have developed distinctions between "direct" consequences of a plea and "collateral" consequences. See *Cole*, 491 Mich at 333-334.

> "'The most obvious "direct consequence" of a conviction is the penalty to be imposed.'" *Id*. at 334, quoting *Blankenship v State*, 858 SW2d 897, 905 (Tenn, 1993). "[A] fine is generally a criminal punishment." *People v Earl*, 495 Mich 33, 40; 845 NW2d 721 (2014). See also *Southern Union Co v United States*, ___ US ___, ___; 132 S Ct 2344, 2350; 183 L Ed 2d 318 (2012) ("Criminal fines, like . . . other forms of punishment, are penalties inflicted by the

-5-

sovereign for the commission of offenses.") Indeed, the pertinent statute in this case states that a conviction for maintaining a drug house is "*punishable* by imprisonment for not more than 2 years, or a fine of not more than $25,000.00, or both." MCL 333.7406 (emphasis added). See *Cole*, 491 Mich at 335-336 (indicating that the language employed by the Legislature in a statute can indicate its intent to impose punishment).

Thus, we conclude that because a fine is a penalty, it is a direct consequence of a guilty plea. See *People v Marez*, 39 P3d 1190, 1193 (Colo, 2002) ("While there may be some debate about exactly which consequences are sufficiently 'direct' to require advisement before entry of a guilty plea, the term at least clearly includes the maximum prison term and fine for the offense charged.")

Plaintiff does not dispute, nor does it admit, that a fine is a direct consequence of a plea. However, plaintiff argues that defendant was indeed aware of the possible fine because the trial court directed him to read the information, which states that a fine up to $25,000 may be imposed for the charge of maintaining a drug house. However, the transcript appears to belie plaintiff's assertion that defendant was aware of the possibility of a fine, even though the trial court directed him to look at the information. The trial court did not mention the fine. Rather, the trial court told defendant that he was correct in his assertion that the maximum penalty was a two-year prison sentence, when, in fact, the maximum penalty is two years *and/or* a $25,000 fine. MCL 333.7406. "When a defendant agrees to plead guilty, he or she is making a bargain, giving up trial rights in exchange for some perceived benefit. In order for a defendant to accurately assess the benefits of the bargain being considered, the defendant must be aware of the immediate consequences that will flow directly from his or her decision." *Cole*, 491 Mich at 338. Without information about a consequence of a sentence deemed by our Legislature to be punishment, which here entails a fine of not more than $25,000, it cannot be said that defendant was aware of the critical information necessary to assess the bargain being considered. Accordingly, defendant is entitled to withdraw his plea. *Cole*, 491 Mich at 338.[3]

## III. PROPORTIONALITY

Defendant next invokes the principle of proportionality, arguing that the $20,000 fine is disproportionate to his offense.[4] This Court reviews for an abuse discretion the proportionality of a sentence. *People v Armisted*, 295 Mich App 32, 51; 811 NW2d 47 (2011). "[T]he principle of proportionality . . . requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). In *People v Antolovich*, 207 Mich App 714, 719; 525 NW2d 513 (1994), this Court held that criminal fines are to be reviewed for proportionality.

---

[3] Having concluded that defendant is entitled to withdraw his plea, we need not address defendant's remaining arguments on this issue.

[4] Although defendant is entitled to withdraw his plea to maintaining a drug house, we address this issue to offer guidance to the trial court should it arise again.

-6-

With the advent of the legislative sentencing guidelines, this Court reviews the proportionality of prison sentences only in cases of departures from the sentencing guidelines, *Babcock*, 469 Mich at 261-262, because sentences within the guidelines range are presumed to be proportionate, *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607, (2008). However, the guidelines do not specifically address fines. MCL 769.34(6) provides in pertinent part, "As part of the sentence, the court may also order the defendant to pay any combination of a fine, costs, or applicable assessments." Our Supreme Court has suggested that proportionality is still the standard by which criminal fines are reviewed. See, e.g., *People v Rosenberg*, 477 Mich 1076, 1076; 729 NW2d 222 (2007) (where the Court remanded that case to this Court to consider whether a criminal fine was appropriate under *Antolovich*).

The facts of *Antolovich* are instructive. In that case, the defendant bought one gram of cocaine at the behest of a police informant. *Antolovich*, 207 Mich App. The defendant did not profit from the transaction and there was no indication "that this transaction evidenced an ongoing pattern of behavior by this defendant." *Id*. The defendant pleaded guilty to delivery less than fifty grams of cocaine, MCL 333.7401(2)(a)(*iv*), and the trial court sentenced him to 4 to 20 years' imprisonment and imposed a $25,000 fine, the maximum allowed under the statute. *Id*. at 715-717. This Court found that the fine violated the principle of proportionality, because "[d]efendant was fined the maximum amount allowed by the statute for delivering one of the least amounts necessary to violate the statute." *Id*. at 719-720.

We conclude that the trial court here did not abuse its discretion in finding that a $20,000 fine was proportional to defendant's offense. At his plea, defendant testified that he sold heroin out of his house from June 2010 until January 2011. His PSIR states[5] that police found 222 packets of heroin in defendant's possession when he was arrested and that defendant told police that he had been earning $2,000 to $3,500 a week from selling heroin. At sentencing, defendant admitted to possessing 222 packets of heroin, but explained that he "was just estimating numbers to the police" when he talked to them. Nevertheless, defendant conceded that he was a large-scale dealer. Assuming that defendant made only $2,000 a week selling heroin, he would have made approximately $40,000 over the course of his admitted dealing. Given the large amount of heroin that defendant possessed and the amount of money he made dealing heroin, the $20,000 fine was not outside the range of principled outcomes.

## IV. RESTITUTION

Defendant next argues that the trial court's restitution award to Amber Checks, Aubrey Checks's mother, was erroneous. This Court reviews for an abuse of discretion a trial court's order of restitution. *People v Bell*, 276 Mich App 342, 345; 741 NW2d 57 (2007). "However, when the determination of restitution involves statutory interpretation, the review is de novo." *Id*. (internal quotation marks and citation omitted).

---

[5] "A presentence report is presumed to be accurate and may be relied on by the trial court unless effectively challenged by the defendant." *People v Callon*, 256 Mich App 312, 334; 662 NW2d 501 (2003).

The trial court awarded two distinct pieces of restitution. First, it ordered the payment of $4,828.96 in lost wages for Amber Checks. Amber testified that she took time off of work to recover emotionally from the death of her daughter, as well as, to care for Aubrey Checks's infant daughter. The trial court relied on MCL 780.766(4)(c), which provides as follows:

> (4) If a crime results in physical or psychological injury to a victim, the order of restitution shall require that the defendant do 1 or more of the following, as applicable:

> * * *

> (c) Reimburse the victim or the victim's estate for after-tax income loss suffered by the victim as a result of the crime.

However MCL 780.766(1) states, limits the scope of the term "victim" to "an individual who suffers *direct* or threatened physical, financial, or emotional harm as a result of the commission of a crime." (Emphasis added.) Amber Checks was not a "victim" under that definition. *People v Paquette*, 214 Mich App 336, 346; 543 NW2d 342 (1995). Thus, she was not entitled to lost wages under MCL 780.766(4)(c).

Defendant concedes that restitution for child care expenses under MCL 780.766(4)(e) is proper. That subsection provides:

> (4) If a crime results in physical or psychological injury to a victim, the order of restitution shall require that the defendant do 1 or more of the following, as applicable:

> * * *

> (e) Pay an amount equal to the reasonably determined costs of homemaking and child care expenses actually incurred and reasonably expected to be incurred as a result of the crime or, if homemaking or child care is provided without compensation by a relative, friend, or any other person, an amount equal to the costs that would reasonably be incurred as a result of the crime for that homemaking and child care, based on the rates in the area for comparable services.

The specific assessment required by MCL 780.766(4)(e) was not performed by the trial court. We therefore remand for the trial court to make such an assessment.

The trial court also rewarded Amber Checks $6,252 for funeral expenses, pursuant to an accounting statement she submitted. The statement shows that Amber Checks paid $1,500 in funeral expenses, while others paid nearly the remainder of the balance. Defendant does not dispute that funeral expenses are recoverable under MCL 780.766(4)(f). However, he calls attention to MCL 769.1a(8), which provides in pertinent part as follows:

> The court shall also order restitution for the costs of services provided to persons or entities that have provided services to the victim as a result of the

-8-

felony, misdemeanor, or ordinance violation. Services that are subject to restitution under this subsection include, but are not limited to, shelter, food, clothing, and transportation. . . . *The court shall not order restitution to be paid to a victim or victim's estate if the victim or victim's estate has received or is to receive compensation for that loss* . . . . [Emphasis added.]

Defendant argues that since part of the funeral expenses were paid for by others, defendant was not responsible for the full amount of the bill.

Defendant relies on the sentence emphasized in the block quote above to argue that Amber Checks is not entitled to the full amount of the funeral bill. That sentence refers to the "victim," whom that statute defines nearly identically to MCL 780.766(1): "'Victim' means an individual who suffers direct or threatened physical, financial, or emotional harm as a result of the commission of a felony, misdemeanor, or ordinance violation." MCL 769.1a(1)(b). Amber Checks is not a "victim" under this statute. However, pursuant to the statute, Amber Checks is entitled to restitution in the amount of $1,500 for the victim's funeral. She is not entitled to the $6,252 for funeral expenses initially awarded.

## V. OV 3

Defendant argues next that our Supreme Court's decision in *People v Houston*, 473 Mich 399; 702 NW2d 530 (2005) was wrongly decided. However, defendant acknowledges that we are bound to follow *Houston*, and presents this issue to preserve a challenge to *Houston* in the Supreme Court.[6]

## VI. PLEA WITHDRAWAL

Defendant next raises two issues in a Standard 4 brief. He first argues that he should have been given an opportunity to withdraw his plea once the trial court stated that it would depart from the sentencing guidelines. This argument is without merit. Defendant calls attention to court rules and case law that provide that where a defendant pleads guilty pursuant to an agreement that includes a sentence recommendation or an agreement for a specific sentence and the court is unable to follow the recommendation or agreement, a defendant is entitled to withdraw his plea. See, e.g., *People v Killebrew*, 416 Mich 189, 206-207; 330 NW2d 834 (1982); MCR 6.302(C)(3). However, defendant's plea bargain did not include a sentence recommendation or an agreement for a specific sentence. Rather, it merely included a dismissal of four counts and a dismissal of a habitual offender second offense notice. Defendant offers no authority holding that even in the absence of a sentencing agreement, a trial court is required to

---

[6] We note that defendant failed to preserve this issue below. At sentencing, defendant argued that *Houston* is inapplicable given the facts of this case. Defendant argues on appeal that *Houston* was wrongly decided. "An objection based on one ground is usually considered insufficient to preserve an appellate attack based on a different ground." *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004).

afford a defendant an opportunity to withdraw if it decides to depart upward from the sentencing guidelines.

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that he is entitled to withdraw his plea on the basis of ineffective assistance of counsel. The Sixth Amendment to the United States Constitution and Article I, § 20 of the Michigan Constitution guarantee the right to effective assistance of counsel for criminal defendants. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). To establish that his counsel did not render effective assistance and therefore that he is entitled to a new trial, "defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (internal quotation marks and citation omitted).

A defendant can raise an ineffective assistance of counsel claim after filing a claim of appeal. MCR 7.211(C)(1) provides in pertinent part as follows:

> (a) Within the time provided for filing the appellant's brief, the appellant may move to remand to the trial court. The motion must identify an issue sought to be reviewed on appeal and show:
>
> (i) that the issue is one that is of record and that must be initially decided by the trial court; or
>
> (ii) that development of a factual record is required for appellate consideration of the issue.
>
> A motion under this subrule must be supported by affidavit or offer of proof regarding the facts to be established at a hearing.

Although defendant did not file a motion for remand in this Court, in his Standard 4 brief he requests an evidentiary hearing. However, defendant has failed to provide an affidavit or offer of proof regarding the facts to be established at a hearing. Therefore, this issue is unpreserved.

Unpreserved claims of ineffective assistance of counsel are reviewed for errors that are apparent on the record. *People v Armisted*, 295 Mich App 32, 46; 811 NW2d 47 (2011). "Whether a person has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). Findings of fact are reviewed for clear error, while determinations of constitutional law are reviewed de novo. *Id*.

Defendant proffers three distinct arguments under this issue. First, he asserts that his trial counsel coerced him into waiving his preliminary examination. Although defendant indeed

waived preliminary examination, there is no indication from the preliminary examination transcript that he was coerced to do so. Moreover, waiving preliminary examination may constitute sound strategy that we will not second-guess here. *People v Rice (On Remand)*, 235 Mich App 429, 444; 597 NW2d 843 (1999). Finally, defendant fails to establish how the outcome of his case would have been different if he had not waived his preliminary examination. Thus, he has not shown that his trial counsel was ineffective on this score.

Defendant argues second that his trial counsel failed to adequately investigate his case. Specifically, defendant contends that it is uncertain whether the heroin that he sold Pressley was in fact the heroin that led to Aubrey Checks' death. However, when a defendant pleads guilty, he waives assertions of ineffective assistance of counsel premised on the prosecutor's capacity to prove factual guilt. *People v Vonins*, 203 Mich App 173, 175-176; 511 NW2d 706 (1993). Here, defendant's argument regarding the source of the heroin that led to Checks' death relates to the prosecutor's ability to prove his factual guilt. Consequently, this assertion is waived.

Defendant argues third that his trial counsel misadvised him regarding the potential sentence he was facing. Specifically, he asserts that his trial counsel told him that his minimum sentence range was 42 to 70 months. An inaccurate prediction of a defendant's sentence is generally insufficient to sustain a claim of ineffective assistance of counsel. *People v Haynes*, 221 Mich App 551, 559; 562 NW2d 241 (1997). Furthermore, there is nothing in the record to support defendant's claim that his attorney proffered inaccurate advice. Therefore, he has failed to establish the factual predicate for his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

## VIII. CONCLUSIONS

In sum, we hold that defendant is entitled to resentencing on his delivery of a controlled substance causing death conviction and that he is entitled to withdraw his plea to maintaining a drug house. Additionally, we hold that the trial court's restitution award was erroneous and defendant is entitled to a hearing relative to the proper child care expenses allowable by MCL 780.766(4)(e). Additionally, Amber Cheeks is entitled to recover the $1,500 she expended for funeral expenses, but not the initial amount of $6,252 awarded by the trial court as the evidence clearly demonstrates she did not pay that amount.

We therefore affirm in part and reverse in part and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause
/s/ Michael J. Riordan

-11-