# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

GIOVANNI NACCARATO,

        Defendant-Appellee.

UNPUBLISHED
May 1, 2018

No. 334824
Wayne Circuit Court
LC No. 11-000851-01-FH

---

Before: GLEICHER, P.J., and BORRELLO and SWARTZLE, JJ.

GLEICHER, J. (*dissenting*).

At issue is the reasonableness of a downwardly departing sentence. The majority holds that the trial court failed to justify the extent of the departure by specifically invoking the principles of proportionality. But this Court's opinion in *People v Walden*, 319 Mich App 344, 355; 901 NW2d 142 (2017), permits us to affirm a departure sentence even absent a trial court's reference to any of the principles of proportionality. *Walden* counsels that a court's "articulation of departure reasons" suffices if the justification for the sentence "was appropriately directed to proportionality principles, and . . . the reasonableness of the departure sentence imposed was more than supported by the record." *Id*.

This is such a case. I would affirm.

I

Defendant Giovanni Naccarato was originally sentenced in 2011, before our Supreme Court decided *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015), and *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017) (*Steanhouse II*). In *Steanhouse II*, 500 Mich at 471, the Supreme Court instructed that the "principle of proportionality" articulated in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), governs departure sentences. The Court also clarified that we "review[] the departure sentence . . . for an abuse of discretion informed by the 'principle of proportionality' standard." *Steanhouse II*, 500 Mich at 476. Both elements of *Steanhouse* are relevant here.

*Milbourn* requires a sentencing court to exercise its discretion "according to the same principle of proportionality that guides the Legislature in its allocation of punishment over the full spectrum of criminal behavior." *Milbourn*, 435 Mich at 651. A judge accomplishes this by fashioning a sentence taking into account "the nature of the offense and the background of the

offender." *Id*. The principle of proportionality encompasses two central ideas: "the most severe punishments" are properly reserved "for those who commit the most serious crimes," and "offenders with prior criminal records are likewise subject to harsher punishment than those with no prior convictions[.]" *Id*. at 650. Lesser punishments are suitable for "those whose criminal behavior and prior record are less threatening to society." *Id*. at 651. The sentencing guidelines incorporate this proportionality principle by "visit[ing] the stiffest punishment against persons who have demonstrated an unwillingness to obey the law after prior encounters with the criminal justice system." *Id*. at 668.

"[C]ompelling mitigating circumstances" must also factor into a proportionality analysis. *Id*. at 653. A sentencing court properly exercises its discretion "by determining where, on the continuum from the least to the most serious situations, an individual case falls and by sentencing the offender in accordance with this determination." *Id*. at 653-654. Post-*Milbourn*, the Supreme Court identified as potential mitigating facts "(2) the defendant's prior record, (3) the defendant's age, and (4) the defendant's work history," as well as "factors that arose after the defendant's arrest, such as cooperation with law enforcement officials." *People v Daniel*, 462 Mich 1, 7; 609 NW2d 557 (2000). Crime-specific circumstances, too, may lessen culpability. See *People v Fields*, 448 Mich 58, 76; 528 NW2d 176 (1995).

During Naccarato's first sentencing, Judge Margie Braxton extensively elucidated her reasons for departing downward by imposing a sentence of probation rather than one within the guidelines range of 51 to 85 months. Although the sentencing occurred six years before the Supreme Court resurrected *Milbourn*'s proportionality principles, Judge Braxton's reasoning corresponds to them nicely. And the mitigating facts she referenced match those identified in *Daniel* and *Fields*. The court weighed the circumstances of the offense and the offender, concluding that although the offense was serious, Naccarato did not intend to hurt anyone. His otherwise unblemished personal background figured prominently in the court's mind, validating that a prison sentence was not necessary to achieve any of the goals of punishment. Judge Braxton also cited Naccarato's age, his full restitution for those harmed by his crime, his strong work history, and his efforts to avoid endangering anyone, all relevant to proportionality principles:

> No prior convictions. And three years have passed [since the commission of the crime], no further convictions, no prior convictions, other than this charge, which is substantial. I am not trying to minimize it. It was a serious charge. A number of things could have happened.
>
> But I do have to give some credence to the fact that he still is gainfully employed and in quite a responsible position.
>
> The letter from his plant manager, engineering plant manager, spells out all the different things that he is required to do. And he indicates that he does them quite well. And he's asking that this defendant be in a position to continue working for the Ford Motor Company.
>
> And of course, employability and it goes to whether or not this Court should depart, along with the age of the defendant never having any priors; no

priors a year and a half later. The fact that he is a family man and does have children to raise. And it looks like he raises them in a manner that he should. We have a letter from his church, St. Anselem and indicating that the involvement that his pastor has had with Mr. Naccarato and with his family for over twenty years.

The probability for committing such a crime again, I think in counsel's argument it would suggest that; and it did suggest that this is a crime of finance. And this Court does understand that quite often people are in financial strife, and they do many things under pressure such as he did.

The fact that the defendant had a six figure job, and it doesn't matter what he made but many individuals are faced with the same type of situation whether they are working or not working. But this man has continued to work throughout and after all of this has happened, he has worked for Ford Motor Company for twenty years; he is a stable employee. And he's a family man; he is raising his family.

He has never had any priors; no priors since this incident.[1]

And certainly there would be intent to burn for financial gain. Because he was in dire financial straits. However, we do have to look at this from a common sense view. And not trying to minimize what it is that the defendant did; the acts that he committed, but he did in an attempt to make sure that no one was harmed, indicated to the tenants that the building was to be fumigated and that was his effort to make sure that none of the tenants were, although he did not get them out of harm['s] way as it relates to the various personal items that were lost by those families. But certainly the steps that he took by indicating that the building was to be fumigated, indicated that there was a desire to ascertain and make certain that no one would be at risk, or harm.

And the fact that the defendant himself is now in a position to repay any and all restitution as counsel has indicated, if allowed to continue to work for the Ford Motor Company, gives some reason for this Court to take into consideration those individuals who have suffered financially and we know that once an individual suffers personally, that may remain with an individual for - - I mean, no money can set aside that experience. And maybe the emotional trauma, being overcome by fire, to the extent that he suffered heat exhaustion and smoke inhalation, the firefighter will probably never forget that.

And this Court is convinced that the defendant, although he intentionally created these acts, had no desire to, or wanted to make certain that none of these individuals suffered any physical harm.

---

[1] The crime was committed in 2007.

The defendant himself has suffered, I am sure that he has to atone for all that he may have received financially. He has to pay all of this back. The building that may have provided some sort of income is no longer available because it appears it is boarded up. . . .

\* \* \*

All right. Well, this Court believes that, number one, because of the age; because of his ability to be rehabilitated; the fact that he had no priors and have had none in the past three and a half years. The fact that he is a family man. The fact that he continues to work for Ford Motor Company. The fact that he seems to be a valuable employee. And the fact that there was no intent to harm physically those that remain there.

And the fact that he is willing to make retribution [sic] as it relates to the restitutional question, would indicate to this Court that it shoud depart from the guidelines. And sentence the defendant to a term of probation in the amount of three years. That he be placed under PA511 Probation for two years.

That he seek and maintain legitimate, verifiable employment.

That he make full restitution to all parties.

The prosecution appealed Naccarato's sentence, contending that most of the court's reasons for departing were not "substantial and compelling" or "objective and verifiable." See *People v Babcock*, 469 Mich 247; 666 NW2d 213 (2003). We remanded for the court to more fully explain why its departure grounds were "substantial and compelling" and "more proportionate" than a sentence within the guidelines would have been. *People v Naccarato*, unpublished opinion per curiam of the Court of Appeals, issued October 4, 2012 (Docket No. 305222) (*Naccarato I*), unpub op at 3. We also held that the court had misscored one of the offense variables and instructed that 20 points be added to Naccarato's OV score. *Id*. at 3-4.

Judge Braxton again sentenced defendant to three years' probation. In support of this sentence she cited the lengthy argument made by Naccarato's counsel, who took great pains to outline "substantial and compelling" reasons that probation was more proportionate than prison. Contrary to this Court's instruction, however, Judge Braxton refused to add 20 points to Naccarato's OV score. The prosecution appealed both the sentence and this error and added a new argument: that OV 2 should have been scored with 15 points rather than zero. This Court remanded for a resentencing, holding that both OV 1 and OV 2 should have been scored. Once again, we directed Judge Braxton to explain why the particular departure she selected was more proportionate than a within-guidelines sentence would have been. *People v Naccarato*, unpublished opinion per curiam of the Court of Appeals, issued June 16, 2016 (Docket No. 320571) (*Naccarato II*), unpub op at 4.

Shortly after *Naccarato II* was decided, the Supreme Court axed the requirement that sentencing courts articulate "substantial and compelling" reasons for a departure. *Lockridge*, 498 Mich at 391-392 ("When a defendant's sentence is calculated using a guidelines minimum sentence range in which OVs have been scored on the basis of facts not admitted by the

defendant or found beyond a reasonable doubt by the jury, the sentencing court may exercise its discretion to depart from that guidelines range without articulating substantial and compelling reasons for doing so."). We now review a departure sentence for reasonableness, applying an abuse of discretion standard. *Walden*, 319 Mich App at 355. "Indeed," the majority emphasized in *Walden*, "*Lockridge expanded* a trial court's sentencing discretion, subject to reasonableness review. Greater trial court discretion constricts an appellate court's wherewithal to find an abuse of discretion." *Id*. (emphasis in original).

Relying in part on *Lockridge*, Naccarato applied for leave to appeal in the Supreme Court. The Supreme Court ordered the trial court to determine "whether it would have imposed a materially different sentence under the sentencing procedure described in *People v Lockridge*, 498 Mich 358 (2015), upon correction of the error in scoring the offense variables." The order continued:

> If the trial court determines that it would have imposed the same sentence absent the scoring error, it may reaffirm the original sentence, stating its reason for departing from the guidelines on the record. If, however, the trial court determines that it would not have imposed the same sentence, it shall resentence the defendant. [*People v Naccarato*, 498 Mich 918; 871 NW2d 195 (2015).]

Not surprisingly, remand round-two resulted in precisely the same departure sentence. The court made its ruling after listening to long and detailed arguments by both counsel. Defense counsel pointed out that the sentence was pursuant to a *Cobb*'s evaluation[2] and was reasonable in light of *Lockridge*. Counsel (again) highlighted that Naccarato had no criminal history, successfully completed probation, continued to be a productive member of society, paid all restitution, supported his family, was actively involved in his church, and volunteered in community service activities. In further mitigation, counsel reminded the court that Naccarato made sure the apartment building he burned was empty before he started the fire. Counsel pointed out that PRV 7 was scored with 20 points only because Naccarato was charged with four arson counts arising from exactly the same act. Had he been charged with one arson crime rather than four overlapping offenses, his PRV score would have been lower, his grid would have changed, and his guidelines substantially reduced.

The court adopted counsel's arguments, recounting the (now familiar) reasons for its decision to downwardly depart:

> This Court did give this defendant a probationary sentence. I believe this Court cited on the record substantial and compelling reasons. I am not quite certain as to whether or not *Lockridge*, the holding in *Lockridge* is in and of itself, lesser compelling reasons are acceptable but certainly it doesn't impose any more substantial and compelling reasons other than the cases already cited.
>
> This Court is of the opinion that even though the guidelines maybe different, is of the same opinion that it was before.

---

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993)

This Court is of the same opinion that the reasons given for sentencing this defendant, which were compelling, reasonable and substantial. And the Court stated at prior hearings the reasons for sentencing this gentleman.

I think defense counsel has again cited the reasons. And as she indicated, Ms. Powell [the prosecuting attorney], what could have happened; a lot of things could have happened. We could say that for every case that comes to this courtroom, what could have happened. It didn't happen in this case.

Has the defendant been punished? He's been on probation in this case. The case is going on nine years now. . . .

* * *

This Court gave substantial and compelling reasons. And given the fact that, as madam Prosecutor indicated, someone could have died; someone could have been more seriously injured than they were. I think that the proportionality test has been met.

I think that given the fact that this man made a poor, horrible decision. And in this Court's opinion, he did everything to rectify, to make whole the victims who suffered financial setbacks. He made every effort to make sure they were made whole in terms of financial losses.

I don't know what else he could have done. I am sure something else could have happened; things could have been worse; the outcomes could have been worse but they were not. I think the proportionality aspect of the sentence given by this Court is well defined and well said in defense counsel's argument.

This man has done everything he could; he made a horrible decision and this Court is of the same opinion that he should receive a probationary sentence.

I haven't heard any different argument that would indicate to this Court what this Court should do other than what it has already done. And that is to find that in view of this man's age, education, family support, and prior to this he was a stellar member of the community. He has been at one job for some thirty years.

He has substantially suffered financial losses. He has made everyone whole. He even entered into an agreement, settlement agreement with the insurance company.

I don't know what else to say except that I am of the same opinion.

I share Judge Braxton's bewilderment.

In light of *Milbourn*, *Steanhouse*, and *Walden*, Judge Braxton did not abuse her discretion the first, second or third times she imposed a probationary sentence. Judge Braxton's three articulations of her reasons for departing detailed the nature of the offense and the background of the offender. She acknowledged both aggravating and mitigating facts not subsumed within the guidelines. She made it abundantly clear that Naccarato was a man with no prior record who made a terrible mistake, but had done everything in his power to rectify it. Given his age, Naccarato presented no danger of recidivism. And because he was gainfully employed and supporting a family as well as recompensing his victims, the court judged that incarceration would harm innocent third parties just as much (or more) than it penalized Naccarato. Judge Braxton considered whether the public needed to be protected by incarcerating Naccarato, and whether a danger existed that Naccarato would reoffend. Although she did not specifically address the extent of the departure, she did not need to. *Walden* holds that we may determine whether Judge Braxton's decision conformed to *Milbourn* by examining the reasonableness of the sentence in light of the circumstances presented.

*Walden* involved an upward departure. The trial court's justification for the departure did not include any explanation of why the sentence it imposed was more proportionate than a guidelines sentence would have been. This Court nevertheless upheld the sentence, rejecting that any additional detail was required: "[A]lthough the trial court did not explicitly refer to the principle of proportionality, we conclude under the circumstances presented that its decision conformed to the law as articulated in *Milbourn*, that the sentence was proportional under *Milbourn*, and accordingly that it was reasonable under *Lockridge*." *Walden*, 319 Mich App at 355. The majority determined that the court had imposed a proportionate sentence based its own review of the record, which included aggravating information contained in a prosecution filing and defendant's long and violent criminal history, facts not specifically cited by the trial court.

Like the trial judge in *Walden*, Judge Braxton did not specifically justify the extent of the departure, in this case why a probationary sentence was more proportionate than, for example, a two-year prison sentence. Nevertheless, she reached a reasonable and thoughtful result that fully incorporated and properly applied the principles of proportionality. Judge Braxton expressed (thrice now) that Naccarato's clean criminal record before and after the crime, his long period of gainful employment, his strong family support, his involvement in his church and the community, and the full restitution he made to those financially injured by his crime warranted probation rather than incarceration. Probation was preferable to prison because it allowed Naccarato to continue working and supporting his family while earning the money he needed to repay the people his arson had harmed. The majority has not shed much light on why these reasons for departure are inadequate, other than to mechanically recite that Judge Braxton failed to specifically discuss "the extent" of the departure during any of the sentencings.

The reason that Judge Braxton did not discuss "the extent" of the departure is obvious: the court did not believe that any prison sentence would be proportionate to the offense or the offender. Judge Braxton's three explanations for selecting probation rather than incarceration implicitly signal her finding that a prison sentence of any length would be disproportionate. I do not know how reference to the guidelines could have made that point any clearer, particularly

given *Walden*'s observation that *Lockridge* has "constrict[ed]" our ability to find an abuse of discretion when the record reveals a reasonable and proportionate sentence.

If Judge Braxton were still on the bench, I am certain that forcing her to offer more detailed reasons that probation is more proportionate than prison would yield exactly the same sentence. So what is the point? The point is that Judge Braxton has retired, permitting the prosecution to try again in front of a new judge who does not share Judge Braxton's level of knowledge and understanding of the offense and the offender. So much for a deferential standard of review or the fundamental precept expressed in *Gall v United States*, 552 US 38, 51-52; 128 S Ct 586; 169 L Ed 2d 445 (2007), that a sentencing judge is in a unique position to craft a fair sentence:

> "The sentencing judge is in a superior position to find facts and judge their import under [18 USC] 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." . . . "The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court." *Rita* [*v United States*, 551 US at 357-358; 127 S Ct 2456; 168 L Ed 2d 203 (2007).] Moreover, "[d]istrict courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do." *Koon v United States*, 518 US 81, 98; 116 S Ct 2035; 135 L Ed 2d 392 (1996).

> "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." [*Id*. at 113.]

The rules have changed since the prosecution first challenged Naccarato's sentence. Our Supreme Court has strongly emphasized that the abuse of discretion standard controls: "[T]he key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Steanhouse II*, 500 Mich at 472 (quotation marks and citation omitted). "Substantial," "compelling," "verifiable" reasons for departure are no longer required. This Court underscored in *Walden* that our job is evaluate a sentence for reasonableness based on the record, not magic words. I would hold that Judge Braxton's reasons for departing meet the *Walden* standard for articulation and describe a reasonable outcome. I would therefore affirm.

/s/ Elizabeth L. Gleicher

- 8 -